624 So.2d 907 (1993)
W. HANDLIN MARINE, INC.
v.
GULF STATES MARINE, INC.
No. 93-CA-256.
Court of Appeal of Louisiana, Fifth Circuit.
September 15, 1993.
Rehearing Denied October 18, 1993.
*908 Leonard L. Levenson, Dee O'Neil Andrews, New Orleans, for appellant/defendant Gulf States Marine, Inc.
Jacob Taranto, III, Metairie, for appellee/plaintiff W. Handlin Marine, Inc.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Gulf States Marine, Inc., appeals from a judgment on open account rendered *909 against it in favor of plaintiff, W. Handlin Marine, Inc. We affirm.
Defendant services ships when they enter port and require repairs. In February 1991, defendant hired plaintiff for the repair, installation and assembly of a bilge alarm panel in the vessel M/V Male. Plaintiff removed the panel and transported it to its shop for repairs. Plaintiff tested, calibrated and returned it to the ship where it did not function. The panel was removed and the process repeated along with the installation of a buck/boost transformer to attempt to raise the voltage. The panel still did not work. Shortly thereafter, the ship sailed and plaintiff invoiced defendant $2,005 for the work performed.
Defendant refused to pay the bill and plaintiff filed suit on open account on June 7, 1991, pursuant to La.R.S. 9:2781. Trial was held on July 23, 1992 and judgment was rendered on August 20, 1992 in favor of plaintiff for $2,005, plus interest, court costs and attorney's fees of $400.
On appeal, defendant first asserts that the trial judge erred in relying on inadmissable hearsay evidence in reaching his decision. Second, it contends that the trial court erred in finding that plaintiff met its burden of proof when plaintiff presented only the hearsay and self-serving testimony of the company president and failed to call the certified marine electrician who tested the equipment a second time. The electrician's absence should have resulted in an adverse presumption against plaintiff.
Defendant also asserts that plaintiff failed to prove a prima facie case because only its President, W. Handlin, testified as to the repairs made, the efforts to correct the problem and the results. It asserts that this testimony was inadmissible hearsay and was allowed over objection.
In the trial, Handlin, President of and lead technician for plaintiff, testified that defendant contracted with his company to perform repairs to the non-functioning bilge alarm panel on the M/V Male. The panel was removed, taken ashore to the shop, repaired, calibrated and tested. The bilge alarm panel worked on shore, but when installed on ship, the panel was not operational due to the inadequate voltage supplied by the ship. Next, the panel was removed and sent to another company for testing in order to insure that the voltage was the problem and not something his company overlooked. The second test showed that the equipment was operating properly. Plaintiff next installed a boost/buck transformer to increase the voltage on the ship. When that failed, plaintiff was unable to go further without the electrical system of the ship being repaired to increase the voltage. Handlin testified that no one requested or hired plaintiff to perform those repairs, which would have cost significantly more than the original cost and thus they took no further action. The ship subsequently sailed, but he was unable to state whether or not the panel was operating when the ship sailed.
On cross examination, Handlin testified that he personally observed only one of the tests and knew the results of the other test from the invoice that the plaintiff received from the company which performed the second test. While he was involved, there was no evidence to show that he was personally involved in all of the events.
Plaintiff introduced two documents. One document is the work order, typed on the stationary of defendant and dated February 18, 1991. It describes the job as follows:
Bilge Level Alarm Panel:
Furnish the services of a certified marine electrician to proceed to vessel. Disconnect and remove one (1), bilge alarm panel and transport to contractor's shop. Set up at shop and repair one pot assembly in panel. Calibrate panel and test for proper operation in ship. Transport panel to vessel and install. The unit when installed will not function properly due to a low voltage condition being experienced on vessel. Furnish and supply to vessel, one (1), step up transformer to bring input voltage up to 240 Volt, the required voltage for proper operation of alarm panel.
The second document is the job completion statement signed by an employee of defendant on February 19, 1991, as follows:

*910 "M-V MALE"

Burnside, LA
2/XX-XX-XX-XX-XX/91)
ITEM 5). BILGE LEVEL ALARM PANEL
Labor of a certified marine electrician and material were provided to disconnect and remove one (1), bilge alarm panel and transport to the contractor's shop. The one pot assembly in panel was set up at the ship for repairs. The panel was calibrated and tested for proper operation in the ship. The panel was transported to the vessel and installed. Due to a low voltage condition on the vessel, the unit when installed would not function properly. Therefore one (1) buck?boost transformer was supplied and installed on the vessel to bring input voltage up to 240V, the required voltage for proper operation of the alarm panel. The voltage supply needed was 220V input with a 240V output. The vessel could not supply the 220V input level required. It had a 205V output at the time of installation. Note, the max. on board was 412V.
In addition, plaintiff attached a copy of the itemized invoice to its petition which states:
"M-V Male"
Burnside, LA
2/XX-XX-XX-XX-XX/91
ITEM 5.) BILGE LEVEL ALARM PANEL
Labor of a certified marine electrician and material were provided to disconnect and remove one (1), bilge alarm panel and transport to the contractor's shop. The one pot assembly in panel was set up at the shop for repairs. The panel was calibrated and tested for proper operation in the shop. The panel was transported to the vessel and installed. Due to a low voltage condition on the vessel, the unit was installed would not function properly. Therefore one(1) buck/boost transformer was supplied and installed on the vessel to bring input voltage up to 240V, the required voltage for proper operation of the alarm panel. The voltage supply needed, was 220V input with a 240V output. The vessel could not supply the 220V input level required. It had a 205V output at the time of installation. Note, the max. on board was 412V.

 LABOR $1,842.00
 MATERIAL 163.00
 _________
 TOTAL AMOUNT DUE: $2,005.00

Defendant called Alberto Guevara, the employee who signed the completion document, and Raymond Melvin, the employee who hired plaintiff. Guevara testified that he signed the completion document in his office, but had no knowledge of the voltage situation on board the vessel. Melvin, on the other hand, was directly involved. He did not admit that low voltage on the ship was at fault, but he basically reiterated the testimony of Handlin. He, in fact, spoke directly to the Marine electrical engineer, Samuel Bordelon, an independent electrician who performed the second test.
In proving an open account, the creditor first must show that the record of account was kept in the course of business. Once the creditor establishes a prima facie case, the burden of proof shifts to the debtor to disprove the existence or correctness of the account. Farlee Drug Center, Inc. v. Belle Meade Pharmacy, Inc., 464 So.2d 802 (La.App. 5th Cir.1985). Prima facie evidence is evidence sufficient to establish a given fact, which, if not rebutted or contradicted, will remain sufficient. Dupre v. Joe's Riverside Seafood, Inc., 578 So.2d 158, 163 (La.App. 1st Cir.1991).
"Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.C.E. art. 801. La.C.E. 801 further lists statements not considered hearsay,[1] C.E. art. *911 803 sets forth several exceptions to the rule,[2] and C.E. art 804 relates to the exception *912 when a declarant is unavailable, (not applicable here).
The court considered plaintiff's documentary evidence and Handlin's testimony. The documents in evidence are admissible hearsay under the business records exception to the hearsay rule. La.C.E. art. 803(6). However, much of Handlin's testimony does not fall within a hearsay exception or exclusion. But, we find the error of his hearsay testimony to be harmless error.
The documents and Melvin's testimony support the facts as stated by Handlin, except for the question of whether or not the ship's low voltage prevented the panel from operation. However, even had defendant moved for an involuntary dismissal at the close of plaintiff's case, the fact that Handlin witnessed part of the event, along with the documents, sufficiently creates a prima facie case. Consequently we find that the hearsay admission is harmless and is not a basis to reverse the trial court judgment.
Defendant also asserts that the failure of plaintiff to have the marine electrical engineer, Bordelon, who performed the second test, testify raised a presumption that his testimony would have been adverse to plaintiff. Bordelon was not employed by plaintiff, but was a member of the local electrical union and his test merely verified the result obtained by plaintiff. An adverse presumption arises upon the unexplained failure of a party to call a witness who possesses peculiar and material knowledge to that party's case; however, this presumption is rebuttable. Faucheux v. Hooker Chemical Corp., 440 So.2d 1377, 1382 (La.App. 5th Cir.1983), writ denied 444 So.2d 1238 (La.1984). Further, when the silent witness is available to either party, the presumption is inapplicable. Wilson v. U.S. Fire & Casualty Co., 593 So.2d 695, 700 (La.App. 4th Cir.1991), writ denied 597 So.2d 1027, 1037 (La.1992); Shelvin v. Waste Management, Inc., 580 So.2d 1022 (La.App. 3rd Cir.1991).
In this case, there was no showing that the witness was not available to defendant, as well as to plaintiff. Thus, the presumption is inapplicable and we find no error in this regard.
The trial judge found that plaintiff satisfied his burden of proof. The appellate court may not modify factual findings of the trial court absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Rosell v. Esco, 549 So.2d 840 (La. 1989).
In Rosell, the court stated that great defence should be given to the trier of fact regarding the credibility of witnesses. It is only "where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." Id. at 844-45. (Citations omitted).
In this case, the evidence does not indicate that the trial judge was clearly wrong in his determination that the parties contracted specifically for the purpose of repairing the panel, that the repairs were effected, tested twice and worked both times while off the ship. Additionally, he was not clearly wrong in finding that the vessel had a problem generating the necessary voltage to properly operate the bilge alarm panel, which was communicated to the appropriate personnel. Also we find no manifest error in the trial court determination that defendant did not contract with plaintiff to repair the vessel's electrical supply system. Thus, the judgment of the trial court is affirmed.
In brief to this court, plaintiff asks for additional attorney's fees for work performed on appeal. However, the plaintiff did not cross-appeal or answer the appeal to request this relief. When a party neither answers the appeal nor cross-appeals, the court is precluded from granting the relief requested. This applies to post-trial attorney's fees as well as to issues on the merits. See: La. *913 C.C.P. art. 2133; Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5th Cir.1989); Deroche v. P & L Const. Materials, Inc., 554 So.2d 717 (La.App. 5th Cir. 1989), writ denied 559 So.2d 1359 (La.1990); Shahla v. City of Port Allen, 601 So.2d 746 (La.App. 1st Cir.1992).
Accordingly, the judgment of the trial court is hereby affirmed.
Costs are to be paid by appellant.
AFFIRMED.
NOTES
[1] Art. 801 provides:

A. Statement. A "statement" is:
(1) An oral or written assertion; or
(2) Nonverbal conduct of a person, if it is intended by him as an assertion.
B. Declarant. A "declarant" is a person who makes a statement.
C. Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) Inconsistent with his testimony, and was given under oath subject to the penalty of perjury at the accused's preliminary examination or the accused's prior trial and the witness was subject to cross-examination by the accused;
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
(c) One of identification of a person made after perceiving him, and which confirms the testimony of the declarant that he had made an identification, except that in cases of amnesia resulting from physical injury from the criminal act, any other person may testify to an out of court identification; or
(d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
(2) Personal, adoptive, and authorized admissions. The statement is offered against a party and is:
(a) His own statement, in either his individual or a representative capacity;
(b) A statement of which he has manifested his adoption or belief in its truth; or
(c) A statement by a person authorized by him to make a statement concerning the subject.
(3). Relational and privity admissions. The statement is offered against a party, and the statement is:
(a) A statement by an agent or employee of the party against whom it is offered, concerning a matter within the scope of his agency or employment, made during the existence of the relationship;
(b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established;
(c) In a civil case, a statement by a declarant when the liability, obligation, or duty of the party against whom it is offered is derivatively based in while or in part upon a liability, obligation, or duty of the declarant, or when the claim or right asserted by that party is barred or diminished by a breach of duty by the declarant, and when the statement would be admissible if offered against the declarant as a party in an action involving that liability, obligation, or breach of duty;
(d) In a civil case, a statement by a declarant when a right, title, or interest in any property or claim asserted by the party against whom it is offered requires a determination that a right, title, or interest exists or existed in the declarant during the time that party now claims the declarant was the holder of the right, title, or interest, and when the statement would be admissible if offered against the declarant as a party in an action involving that right, title, or interest;
(e) A statement by a declarant offered against the party in an action for damages arising from the death of that declarant; or
(f) A statement by a minor child offered against a party in an action to recover for injury to that child, or against the person responsible for the child in an action to recover damages for losses caused by the child.
(4). Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitant of it, or form in conjunction with it one continuous transaction.
[2] The 23 article 803 exceptions are listed as follows without the explanatory descriptions:

Art. 803. Hearsay exceptions; availability of declarant immaterial
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(1) Present sense impression.
(2) Excited utterance.
(3) Then existing mental, emotional, or physical condition.
(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment.
(5) Recorded recollection.
(6) Records of regularly conducted business activity.
(7) Absence of entry in records of regularly conducted business activity.
(8) Public records and reports.
(9) Records of vital statistics.
(10) Absence of public record or entry.
(11) Records of religious organizations.
(12) Marriage, baptismal, and similar certificates.
(13) Family records.
(14) Records of documents affecting an interest in property.
(15) Statements in documents affecting an interest in property.
(16) Statements in ancient documents.
(17) Market reports, commercial publications.
(18) Learned treatises.
(19) Reputation concerning personal or family history.
(20) Reputation concerning boundaries or general history.
(21) Reputation as to character.
(22) Judgement of previous conviction.
(23) Judgment as to personal, family, or general history, or boundaries.
(24) Testimony as to age.