685 So.2d 206 (1996)
Leonard J. CLINE
v.
GEORGE KELLETT & SONS, INC.
No. 96-CA-456.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1996.
Edward Gothard, Metairie, for Plaintiff/Defendant in Reconvention/Appellee.
Leonard J. Cline, Metairie, for Plaintiff/Defendant in Reconvention/Appellee.
F. Victor Hastings, Kenner, for Defendant/Plaintiff in Reconvention/Appellant.
*207 Before GAUDIN, WICKER and DALEY, JJ.
WICKER, Judge.
This appeal arises from a suit for breach of contract and/or specific performance pursuant to a contract to supply lumber filed on behalf of Leonard J. Cline (Cline), plaintiff/appellee, against George Kellett & Sons, Inc. (Kellett) and Robert Sessum (Sessum), defendants. Kellett and Sessum reconvened pursuant to La.R.S. 9:2781, the open account statute, for amounts allegedly owed under the contract. They also sought to have a private works lien (La. R.S. 9:4801, et. seq.) recognized, and attorney's fees based on La. Code Civ. Proc. art. 863 as a sanction for alleged misuse of legal proceedings as well as pursuant to the contract and La.R.S. 9:2781.
The trial judge dismissed Cline's demands against Kellett and Sessum and entered judgment in favor of Kellett and against Cline in the amount of $3,688.22 with legal interest from the date of judicial demand. He apportioned costs equally and recognized the privilege. Kellett (appellant) now appeals seeking an additional amount of $3,275.12. It also seeks attorney's fees, additional interest, and costs. We affirm.
Kellett specifies the following errors:
1. The trial court erred when it refused to include the price of the roof decking in the judgment.
2. The trial court erred when it refused to award Kellett its attorney's fees, service charges and costs.
Cline testified that in the fall of 1992 he decided to build a house. He obtained estimates for framing from lumber companies. Cline was in the process of accepting the bid from Lumber Products when Sessum, a salesperson for Kellett, contacted him informing him that he would give him a better price for the entire job. Cline gave Sessum a set of detailed plans and insisted the estimate be for the entire job with no additional amounts added later. According to Cline, Sessum agreed. Sessum denied quoting a guaranteed price for the entire job. Cline refused to pay the additional $6,706.77 above the original quotation. The trial judge concluded there was no guaranteed price for the job. He determined the price quoted by Sessum was an "estimate." The trial judge explained that the estimate was based on what was thought to be needed and that if more were needed and used by Cline then these materials should also be paid for. Cline has not appealed the trial judge's award of an additional amount above the quoted bid price by Sessum. Kellett appeals the trial judge's failure to award the full amount of $6,706.77 and seeks recovery of $3,275.12.[1]
Cline denied receiving all of the lumber for which he had been billed by Kellett. Appellant argues Cline never pled this issue. We disagree. Cline specifically pled that he denied delivery of extra lumber outside the quoted bid. Furthermore, at trial he testified he did not receive all of the lumber for which he had been invoiced.
The trial judge painstakingly went through all of the invoices and delivery tickets. He granted judgment in favor of Kellett for the amount of $6,706.77 but deducted from that amount $3,018.55 reflected on a delivery ticket. He determined Kellett had not met its burden in proving the items on that delivery ticket were actually delivered to the job site. He disallowed $3,018.55 because the delivery ticket was not stamped nor signed in the normal course of business.
Dale P. Bernard (Bernard), Kellett's vicepresident and general manager, testified as to Kellett's delivery and invoice procedures. He stated the normal procedure is for the driver to take the items to the job site and get a signature on delivery. The driver is Kellett's employee and is instructed in company policy. The signed ticket is processed and an invoice is sent to the customer. He explained that when the sale is charged if there is no one present at the job site, the delivery man dumps the material and notes on the ticket that no one was there. The ticket is then processed as usual. We note *208 that the disputed ticket has no such notation by the driver.
Bernard also testified that Kellett stamped each ticket with the statement: "received by, the date, time, condition of material, exceptions." He stated the purpose of this stamp was to give the drivers a place for the customer's signature. It is company policy that the stamped statements allow the customer to note problems so that Kellett would have a record. The disputed ticket has no stamp.
Bernard identified the disputed ticket as being for roof decking. He acknowledged the ticket was unsigned as accepted for delivery, unlike other tickets. He explained it was "possible" that it was raining and the work crew had taken off the date of delivery. He could only "surmise" that no one was on the job site when the materials were delivered. Bernard admitted he did not actually know whether the materials were delivered and received at the job site.
Although appellant states in brief the trial judge denied recovery of $3,018.55 because the invoice was unsigned, the record shows the trial judge also based his reason on the finding this particular invoice was not even stamped in the normal course of business when he stated:
It's an invoice that went out of your office and it was not signed. It's not stamped in your normal course of business, which should be done, so I think that there is some doubt in my mind as to whether or not this actually was delivered to the job site. No one signed it.
In order to prove an open account Kellett must first prove:
the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once a prima facie case has been established by a plaintiff-creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. The amount of an account is a question of fact which may not be disturbed absent manifest error [citations omitted].
Jacobs Chiropractic Clinic v. Holloway, 90-1054 (La.App. 1st Cir. 10/18/91), 589 So.2d 31, 34. We have also held that "the creditor must first show that the record of the account was kept in the course of business. Once the creditor establishes a prima facie case, the burden of proof shifts to the debtor to disprove the existence or correctness of the account." W. Handlin Marine v. Gulf States Marine, 624 So.2d 907 (La.App. 5th Cir.1993), writ denied, 93-2851 (La.1/13/94), 631 So.2d 1166.
The trial judge concluded Kellett had not met its burden of establishing a prima facie case since there was no showing the unstamped and unsigned delivery ticket was kept in the course of business. Furthermore, the evidence also shows that the normal procedure for delivery was that the delivery drivers attempt to obtain a signature and if this could not be done then an explanation would be written on the ticket. Thus, this delivery ticket further deviated from Kellett's normal business practice. Additionally, there was no supporting evidence of the accuracy of the ticket since Bernard testified he did not know whether this delivery had been made. Thus, the burden did not shift to Cline to prove the inaccuracy of this delivery.
Appellant correctly notes that proof of actual delivery is not required in order to make out a prima facie case. However, proof of actual delivery is not required "[i]n a suit on open account, where the record shows that books were kept in the normal course of business and indicated that merchandise has been sold and delivered." Entron v. Callais Cablevision, 307 So.2d 787, 793-94 (La.App. 1st Cir.1975). In the instant case the delivery ticket in question deviates from the procedure used in Kellett's normal course of business and does not show by its own procedures that these items were delivered.
Appellant relies on the case of Cardinal Wholesale Supply, Inc. v. Rainbow Floor Covering, Inc., 432 So.2d 419 (La.App. 1st Cir. 1983), a case in which ledger cards or statements of the account were sufficient to establish a prima facie case. That case is factually distinguishable. In Cardinal the credit manager testified the delivery tickets were signed by the defendant and that "all *209 the records concerning the account had been made under his supervision and control." Id. at 420. In contrast Bernard testified he did not know whether the items were delivered and could only "surmise" the items had been left at the job site. We find no manifest error in the trial judge's conclusion Kellett did not meet its burden of proving a prima facie case.
Appellant also argues Cline did not successfully rebut its prima facie evidence. However, we pretermit a discussion of this issue since the trial judge correctly found the burden did not shift to Cline. W. Handlin Marine, supra.
Appellant concedes that assuming the trial judge correctly denied it recovery of the additional amount then there is no abuse in the trial judge's discretion in disallowing attorney's fees and in apportioning costs equally.
Appellant seeks contractual interest instead of the legal interest awarded by the trial judge from the date of judicial demand. It seeks delay damages "on each invoice from the due date until paid" and relies on the credit agreement which provides in part:
Standard terms are net 10th prox. All purchases shall be paid for by the tenth (10th) day of the month following purchase and will be considered past due on the eleventh (11th) day of the month following purchase. No discounts will be allowed. In the event full payment of an invoice is not received within the terms stated above, buyer agrees to pay a service charge on the past due amounts at the rate of one and one-half percent (1.5%) per month (18% APR), fifty cents ($0.50) minimum, or the maximum permitted by law, if less.
La. Civ.Code art. 2000 provides:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well [emphasis added.]
Invoices and delivery tickets were introduced at trial. From the evidence presented there is no way to calculate when the amount was due. Appellant asks that we calculate it based on each invoice from the due date until paid. This is problematic for several reasons: (1) lumber was returned for credit and we cannot determine which lumber was subject to the credit; (2) despite the terms of the credit agreement which disallowed any discount, Cline was allowed a 2% discount for paying within 30-days of the bill and we cannot determine which shipments had this discount applied; (3) although there was no evidence of shipments made after 2/02/93, the amounts of indebtedness demanded of Cline on the statement of March 31, 1993,[2] the demand letter of August 18, 1993, and the notice of lien, were lower than the amount demanded at trial; (4) Dale P. Bernard, Kellett's vice-president and general manager, testified regarding discrepancies in the amount due by stating, "Frankly, there's been so many different amounts bandied about", and (5) the amount testified to at trial did not correlate with the invoices in evidence even when sales tax was added to the invoices. There were too many inconsistencies in this record to enable the trial judge to make a calculation of delay damages. Additionally, Cline paid timely on a portion of the invoices and Kellett would not be entitled to delay damages for these. Furthermore, the terms of the credit agreement were modified since discounts were allowed on payments made within 30-days of the bill. We find no manifest error in the trial judge's awarding interest from the date of judicial demand rather than imposing interest under the terms of the credit agreement.
Accordingly, for the reasons stated, the judgment is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The trial judge deducted $3,018.55, the figure on the invoice he disallowed. That figure did not include sales tax.
[2] This was the only statement introduced at trial.