SUSAN M. CHEHARDY, Judge.
 

 |2On Appeal, Logo Express Marketing, Inc. seeks review of the judgment on open account against it in favor of Wholesale Printables, Inc. For the following reasons, we affirm.
 

 Plaintiff, Wholesale Printables, filed suit on open account against defendants, Logo Express Marketing, Inc. and Raju R. Sa-dhwani, for unpaid invoices, returned checks, and “finance charges” totaling $156,900.77 with legal interest, attorney fees, and costs. In this case, Wholesale Printables (“WP”) sells printable merchandise, such as t-shirts and hats, on which others paint, screen, or embroider their emblems. Logo Express Marketing, Inc. (“Logo”) has purchased t-shirts and other printable merchandise from WP since 2002. Throughout their business relationship, Mr. Sadhwani of Logo would place an order then he or one of his designated employees would pick up the order at WP’s Harahan warehouse.
 

 At trial, WP presented evidence that, as early as April 22, 2005, Logo picked up merchandise from WP without immediately tendering payment. WP presented testimony from its Secretary/Treasurer, Debbie Marchiafava, that, according to their accounting system, as of August 31, 2005, Logo had an outstanding balance |,..of $143,676.75 with their company. At trial, WP introduced original invoices and reprints of unavailable invoices, which Marchiafava testified were either damaged or destroyed when WP’s Harahan warehouse was damaged by Hurricane Katrina.
 

 At trial, Mrs. Marchiafava, and two former WP employees, Leann Oubre and Mike Melville, testified about the computer accounting system that WP used in its daily business. In short, when a customer places an order with WP, the WP customer service representative inputs the order into the computer system. The computer system generates a “pick ticket” that details the order, and warehouse employees assemble the order for pickup by or delivery to the customer. Thereafter, an office employee prints an invoice for the order on a three-part form consisting of a white page, a yellow page and a green page.
 

 In WP’s ordinary course of business, when an order is picked up by the customer, the customer pays for the merchandise in WP’s office (attached to the warehouse) before receiving the goods. After receiving payment, the WP employee gives the white and green pages of the invoice to the customer and retains the yellow copy for their files. On a daily basis, all payments and yellow copies are couriered to WP’s Baton Rouge office to be processed by the
 
 *340
 
 accounting department. At trial, WP introduced evidence of unpaid invoices to Logo, totaling $140,885.61, plus returned checks from Logo totaling $4,579.80, and accrued “finance charges” of $11,435.36.
 

 WP employees, Leann Oubre and Mike Melville, who worked in WP’s Harahan location, testified that Logo’s orders were usually picked up by one of Mr. Sa-dhwani’s employees, Jeff or Sylvester. Further, Ms. Oubre and Mr. Melville identified initials on a number of invoices as Jeffs or Sylvester’s initials. Furthermore, Ms. Oubre testified that she remembered Mr. Melville, the office manager, personally handling some of Logo’s orders because Logo, since it was a |4“big” customer, was allowed to pick up merchandise without making payment, i.e., “on credit,” which was unusual. Mr. Melville also verified that, in order to cultivate a business relationship, he personally dealt with Logo’s employees when they came to pick up orders.
 

 At trial, Mr. Sadhwani admitted that the undisputed invoices accurately reflect that Logo currently owed WP about $10,000.00 for mei-chandise. Mr. Sadhwani could not, however, verify his employee Jeffs initials on a number of invoices. Oddly, he admitted that, if Jeff testified that the initials were his, then Mr. Sadhwani would agree that Logo was responsible for the invoices. He did verify that Sylvester had initialed several invoices for pick-up.
 

 On June 6, 2008, the trial judge rendered judgment in favor of WP and against Logo for $143,676.75 with judicial interest. However, the trial judge denied WP’s claim against defendant, Raju R. Sa-dhwani and refused to award attorney fees. In his written Reasons for Judgment, the trial judge opined:
 

 To prove a claim on open account, the plaintiff creditor must prove the account by demonstrating its normal course of business and introducing supporting testimony regarding the accuracy of the account.
 
 See, National Gypsum v. Ace Wholesale,
 
 96-215 (La.App. 5 Cir. 11/26/96), 685 So.2d 306, 308-09. Once plaintiff establishes a
 
 prima facie
 
 case, the burden shifts to the defendant to prove the inaccuracy of the account.
 
 Id.
 

 After considering the evidence presented at trial, the credibility of the witnesses, and the post-trial memoran-da, the Court finds that the plaintiff Wholesale satisfied its burden to prove the principal amount due on Logo Express’ account. Wholesale presented multiple witnesses and records to establish Wholesale’s normal course of business with respect to placing orders.
 

 Defendants, on the other hand, failed to present credible evidence to dispute the principal amount owed on the account. The evidence further indicates that prior to April 2005, Logo Express purchased a considerable volume of merchandise from Wholesale. Therefore, defendants’ arguments that Logo Express did not make the purchases at issue simply are not credible. As a result, the Court finds that Wholesale is entitled to a judgment against defendant Logo ^Express in the amount of $143,676.75, which represents the principal amount due on the account.
 

 On appeal, Logo seeks review of that judgment. Logo, in its appellate brief, admits that it still owes WP for the amounts reflected by the returned checks, which is $4,579.80. Further, Logo admits that it owes specific invoices to WP, totaling $12,005.62.
 
 [1]
 

 
 *341
 
 On appeal, however, Logo argues that the trial judge erred in finding that it owed WP for amounts claimed under any other invoices. Specifically, Logo denies the following invoices: (1) 83B757 for $ 2,293.92; (2) 838996 for $ 2,870.64; (3) 840732 for $ 5,328.00; (4) 842052 for $ 3,391.20; and (5) 844937 for $ 1,341.24. Logo claims that the invoices are not initialed by a Logo employee, which means that Logo did not receive the invoiced merchandise. These disputed original invoices total $15,225.00.
 

 Further, Logo specifically denies responsibility for any invoice that was a “computer generated print out that plaintiffs representative claim[s] to be copies of additional outstanding invoices.” Logo denies responsibility because there is no proof that these invoices, which total $70,129.94, reflect merchandise that was actually received and/or not paid for by his company. Moreover, these invoices are not the original invoices and, as such, were not maintained in the normal course of business and were inadmissible since there is no proof that the original invoices were destroyed, as WP claims.
 

 Finally, Logo asserts that it paid cash for many invoices, which was not credited to Logo’s account by WP’s employees. In support of its arguments, Logo relies on
 
 Cline v. George Kellett & Sons, Inc.,
 
 96-456 (La.App. 5 Cir. 11/14/96), 685 So.2d 206. This Court, in
 
 Cline,
 
 found that Kel-lett was not entitled to recover on an invoice not kept in course of normal business procedures:
 

 The trial judge concluded Kellett had not met its burden of establishing a
 
 prima facie
 
 case since there was no showing the unstamped and unsigned delivery ticket was kept in the course of business. Furthermore, the evidence also shows that the normal procedure for delivery was that the delivery drivers attempt to obtain a signature and if this could not be done then an explanation would be written on the ticket. Thus, this delivery ticket further deviated from Kellett’s normal business practice. Additionally, there was no supporting evidence of the accuracy of the ticket since Bernard testified he did not know whether this delivery had been made. Thus, the burden did not shift to Cline to prove the inaccuracy of this delivery.
 

 Cline,
 
 685 So.2d at 208.
 

 Wholesale responds that it established a
 
 prima facie
 
 case, which shifted the burden of proof to Logo to disprove the existence or correctness of the account. Wholesale notes that “proof of delivery” is not required to establish a
 
 prima facie
 
 case where records show that books were kept in a normal course of business and indicated that merchandise has been sold and delivered.
 
 Jacobs v. Holloway,
 
 589 So.2d 31 (La.App. 5th Cir.1991);
 
 Cline v. Kellett & Sons, Inc.,
 
 96-456 (La.App. 5 Cir. 11/14/96), 685 So.2d 206. We agree.
 

 It is well settled that a court of appeal may not set aside a finding of fact by a trial court in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Upon review, we find no error in the trial judge’s finding that WP established
 
 prima facie
 
 evidence of the principal amount due on Logo’s account. Accordingly, the judgment is affirmed. Costs of this appeal are
 
 *342
 
 assessed against appellant, Logo Express Marketing, Inc.
 

 AFFIRMED.
 

 [1]
 

 . The specific invoices are (1) 833707 for $ 1,996.10; (2) 834379 for $ 161.60; (3) 834671 for $ 552.96; (4) 834699 for $ 727.92; (5) 835394 for $ 231.60; (6) 835396 for
 
 *341
 
 $ 4,579.20; (7) 835446 for $ 968.40; and (8) 838449 for $ 2,787.84.