NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-971


LAFAYETTE GENERAL MEDICAL CENTER, INC.

VERSUS

RICHARD HILL


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
LAFAYETTE CITY COURT
PARISH OF LAFAYETTE, NO. 2017 CV 0367
HONORABLE FRANCES MORAN BOUILLION, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, Shannon J. Gremillion, John E. Conery, and Van H. Kyzar, Judges.

**COOKS, J., dissents and assigns written reasons.**


**REVERSED AND RENDERED.**

**Edward Trentham McCarthy**
**The McCarthy Law Firm**
**7922 Picardy Avenue**
**Baton Rouge, Louisiana  70809**
**(225) 767-9055**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Lafayette General Medical Center, Inc.**

**Richard Hill**
**In Proper Person**
**140 Roma Drive**
**Breaux Bridge, Louisiana  70517**
**(337) 316-1397**
**PRO-SE DEFENDANT/APPELLEE**

**CONERY, Judge.**

Plaintiff, Lafayette General Medical Center (LGMC) appeals the September 21, 2017 judgment of the trial court dismissing its suit on open account against pro-se defendant Richard Hill on the basis that LGMC failed to carry its burden of proof. For the following reasons we reverse the trial court's dismissal of LGMC's claim against Mr. Hill seeking payment of his open account and render judgment in favor of LGMC.

## FACTS AND PROCEDURAL HISTORY

Richard Hill, a self-employed real estate agent, received medical services from LGMC on three separate occasions: June 4, 2014, June 13, 2014, and June 16, 2014. Mr. Hill admitted that he went to LGMC for tests ordered by his doctors and was seen by LGMC's staff. The medical services were performed at LGMC on the dates shown on the invoices Mr. Hill admittedly received.

After the medical services were rendered to Mr. Hill, LGMC billed Mr. Hill's health insurance company on file, Blue Cross PPO. LGMC received payments, credits, and contractual discounts from Mr. Hill's health insurer, which were applied to the three bills. After payment from Mr. Hill's insurer there were outstanding balances as follows: June 4, 2014 - $168.00; June 13, 2014 - $623.86; and June 16, 2014 - $1,778.82, for a total outstanding balance of $2,571.48.[1] LGMC attempted to collect the outstanding balance without success by using in-house collection efforts as well as the services of a collection agency.

---

[1] Mr. Hill testified that his wife, who had been employed by Continental Airlines for some twelve to thirteen years, had lost her insurance benefits from Blue Cross PPO when Continental Airlines was bought out by United Airlines. However, the documentation submitted into evidence by LGMC and the Explanation of Benefits (EOB's) submitted into evidence by the trial court on behalf of Mr. Hill reflect the Blue Cross PPO policy was still in force and effect at the time the medical services were rendered to Mr. Hill by LGMC.

On January 30, 2017, LGMC filed suit against Mr. Hill seeking recovery of the $2,571.48 outstanding balance with judicial interest from the date the obligations became due, pursuant to La.Civ.Code art. 2000. LGMC also sought a minimum attorney fee of 33 1/3 %, or $500.00, whichever was greater, court costs, and other costs associated with the collection of the account balance. Mr. Hill was properly served with LGMC's petition and answered the petition contending:

> I don't feel I owe anything ($2,571.48)[.] I was sent to take a bone + CATScan [sic]. No one ever call[ed] me or gave me [an] appointment to come back for review. I call[ed] the Dr's that set it up once I didn't hear from know [sic] one[.] I had Obma [sic] Insurance United Health Care. I yet haven't heard from any of the doctors concerning this matter, I don't owe anything.

The trial was held on September 7, 2017, with Mr. Hill representing himself. LGMC was represented by counsel. Also present on behalf of LGMC was its Patient Financial Services Director, Paul Phillip Comeaux. When questioned about the invoices, Mr. Comeaux testified that he was familiar with the related financial records of LGMC. He further testified that the documents related to the three separate bills for medical services provided to Mr. Hill were part of the records of LGMC kept in the normal course of business. Mr. Comeaux reviewed the three itemized bills for the dates of service at issue, and thoroughly discussed the total billed charges, payments, credits, and current balance due. The three itemized medical bills were introduced into evidence as LGMC #1 in globo.

Mr. Comeaux also explained the distinction between the medical services provided to Mr. Hill by LGMC and those provided to Mr. Hill by his treating physicians. Mr. Comeaux clearly stated that the bills from LGMC were for medical services rendered by LGMC and not for any of the medical services provided by his treating physicians. Mr. Comeaux testified he had no knowledge

2

of why Mr. Hill's physicians allegedly failed to communicate with him. He further testified that LGMC was not responsible for any part of Mr. Hill's medical treatment by his physicians and had no responsibility for what physician was supposed to do in connection with treatment rendered to a patient such as Mr. Hill. Counsel for LGMC rested its case.

Mr. Hill then presented his argument to the trial court and reiterated his claim that he should not be required to pay for test results he allegedly had not seen, and which had not been explained to him by his physicians. He did not dispute that he went to LGMC where the tests were performed and for which the bills were allegedly outstanding. However, he claimed he was never told the results and therefore was "left in the blind and all I get is the bill."

On cross-examination, Mr. Hill was unable to remember the names of his doctors, except for Dr. Milton Jolivette. He claimed that he had contacted the offices of his doctors by phone and had spoken with nurses. He claimed that he never received a call back or any information about the results of the tests that were ordered by the doctors and performed at LGMC. The trial court asked Mr. Hill for copies of the EOBs from his insurer. Mr. Hill stated he did not have the correct copies, but they were provided to Mr. Hill and the trial court by opposing counsel. Mr. Hill identified the EOBs as the copies of the documentation he received from his insurer, Blue Cross PPO, in connection with LGMC's claim. The EOBs were then submitted into evidence as Plaintiff's #2 in globo by the trial court on behalf of LGMC.

The trial court then summarized Mr. Hill's argument after the close of evidence as follows, "Mr. Hill argues that he received bills, he went to a hospital, laid on a table, et cetera … received bills, but has no proof that the tests were ever

3

done other than he was told to lay on this table.  So would you please address this argument?"

Counsel for LGMC responded, "Yes Judge.  First of all, this is the first time he's - - he's ever raised that defense and we can't prove a negative that - - that these - - these tests were - - were not conducted.  The tests in fact were conducted and sent to his physician, Judge, and - -"

The trial court then stated, "Well, your - - we don't know whether they were, because your witness testified that he didn't know.  And he did raise this exact defense in his answer.  That he doesn't hear - - didn't hear from anyone."  To which counsel for LGMC responded, "That he didn't hear from his physicians."

The trial court then further summarized what it found to be Mr. Hill's contention, "We know the billing got done.  But, we don't know actually if the test was successfully administered.  If it wasn't successfully administered, he doesn't owe the money.  That's his position and I have to say that makes sense to me."

The trial court's framing of the issue then led to a discussion between the trial court and counsel for LGMC on the burden of proof in an open account case:

THE COURT:

> I'm still here with - - I don't have any proof other than test[s] were ordered, a charge was made, he laid on a table, but I have no proof that actual services were rendered.  I just don't have it.

MR. MCCARTHY:

> And Judge, again, I - - I don't feel that's the plaintiff's burden.  I think that's the burden of the defendant and for him to speculate that this could or could not have happened.  He should have brought some evidence in, because it's his burden.

THE COURT:

> Well, I don't agree that it's his burden.  I believe it's your burden and it's your hospital.  I mean, the people who have the

4

evidence of whether the tests were performed correctly is you. Those physicians are part of you.

A discussion then ensued concerning whether the physicians who had treated Mr. Hill were in fact employed by LGMC such that LGMC would have access to the information that the tests in question were performed. At this juncture the trial court stated:

> Okay. Well - - though the Court can't take official notice of that, mean, I don't think I can. He (Dr. Jolivette) happens to be my personal physician and he is employed by Lafayette General. So, I - - I do know that. I don't know who else is employed by Lafayette General. I just know that you all employ doctors. So, assuming that those doctors are under the employ of Lafayette General, Mr. McCarthy can get them to give you [Mr. Hill] what you want.

Mr. Hill then agreed that if he could find out the information about his health, he would "come to some type of agreement. I won't - - I won't pay the full service." The trial court then responded, "Okay. Then what I'm going to do is I am going to dismiss this suit and I'm presuming they're going to file an appeal - -" to which counsel for LGMC responded "Yes, Ma'am."

The trial court then stated, "I'm dismissing it on grounds that there is no proof that any services were actually rendered." A judgment dismissing LGMC's suit on open account was signed on September 20, 2017. The trial court added in script to the judgment of dismissal that "plaintiff rested case without submitting proof by a preponderance of evidence." LGMC timely appealed the trial court's September 20, 2017 judgment of dismissal.

## ASSIGNMENTS OF ERROR

LGMC assigns the following errors on appeal:

A.  The Trial Court erred in finding that LGMC did not meet its burden of proving its claim for non-payment of medical services to defendant Hill.

5

B.    The Trial Court erred in finding that LGMC had the burden to negate Hill's affirmative defense despite Hill's failure to meet the burden of proving such affirmative defense.

C.    The Trial Court erred in finding that Hill's physicians were employed and/or controlled by LGMC.

## LAW AND DISCUSSION

### Standard of Review

In *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So.3d 1110, 1115-16, the supreme court reiterated the duty of appellate courts in a manifest error review and stated in pertinent part:

> In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass'n*, 02-2660, p. 9 (La. 6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).

> This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La. 2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

Errors of law, however, are reviewed *de novo*. *Foti v. Holliday*, 09-93 (La. 10/30/09), 27 So.3d 813. Accordingly, when reviewing an issue of law, we

6

"render[ ] judgment based on the record without deference to the legal conclusions of the lower courts." *Id.* at 817

*Assignment of Error Number One*

On appeal, LGMC claims the trial court erred in finding that it failed to meet its burden of proof in proving its claim for medical services provided to Mr. Hill. We agree and find for the following reasons that LGMC carried its burden of proof on the action for an open account against Mr. Hill by a preponderance of the evidence.

Louisiana Revised Statutes 9:2781(D) defines an open account as follows, "'[O]pen account' includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." To prove a claim in an action on an open account, a panel of this court held:

> [P]laintiff first must prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once a prima facie case has been established by a plaintiff-creditor; **the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits.**

*Bieber-Guillory v. Aswell*, 98-559, p.6 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, 1149 (quoting *Broussard v. Guilbeaux*, 93–1353, p. 4 (La.App. 3 Cir. 5/4/94); 640 So.2d 509, 512).

The record before us on appeal shows that LGMC provided the necessary evidence to support its claim on an open account and carry its burden of proof. The undisputed testimony of LGMC's financial officer, Mr. Comeaux, provided that the records of the three bills reflecting medical services to Mr. Hill were kept in the regular course of business. Further, Mr. Comeaux's testimony also provided the

7

required accuracy of the billing records, as he specifically discussed the three bills, explained the payments made by Mr. Hill's insurer, and explained the balance owed by Mr. Hill on the accounts. All supporting documentation for Mr. Comeaux's testimony was admitted into evidence without objection.

LGMC argues that Mr. Hill's affirmative defense that he never received the results of his testing done at LGMC from his treating physicians, or the additional defense that there was a problem with the testing which precluded his receiving the results, is governed by La.Code Civ.P. art. 1005 and is an allegation of a failure of consideration. Louisiana Code of Civil Procedure Article 1005 states:

> The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as a peremptory exception or as an incidental demand, or a peremptory exception as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.

Despite Mr. Hill's contention in his pleadings that he had never received any test results from his physicians, it is undisputed that he went to LGMC and underwent the testing ordered by his treating physicians. Other than his testimony that he called his physicians to obtain this information, he could not dispute that the testing for the three bills at issue was done at LGMC.

The trial court found, with no evidence to support such a finding, that there may have been a problem with the tests performed, and that was the reason Mr. Hill was never informed by his doctors of his test results. Accordingly, without testimony from LGMC that the tests were actually performed, the trial court found

that LGMC failed to carry its burden of proof that Mr. Hill owed outstanding balances on the three bills for the medical services performed at LGMC.

It is well settled that once the plaintiff-creditor in a claim on an open account has established that a proper "record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy," a prima-facie case has been established, and the "burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits." *Bieber-Guillory*, 723 So.2d at 1149.

We find the trial court committed an error of law in failing to shift the burden of proof to Mr. Hill to prove the affirmative defenses that he never received any results of the testing done at LGMC from his treating physicians, and the cause of this result was some failure that may have occurred in the testing conducted at LGMC.

Notwithstanding the discussion with the trial court and counsel on the record at trial, there was no testimony or documentation submitted into evidence by Mr. Hill that LGMC had any obligation to Mr. Hill to inform him of the test results or that any of Mr. Hill's doctors were employed by LGMC and could be ordered to report the test results to Mr. Hill. Further, the billing for the medical services at issue did not include any charges for interpretation of the test results, as that responsibility lies squarely with the treating physicians.

For the foregoing reasons we reverse the judgment of the trial court dismissing LGMC's claim on an open account against Mr. Hill. Having found that LGMC established its claim in the amount of $2,571.48, we pretermit any further discussion of LGMC's remaining two assignments of error.

We will now address LGMC's prayer in their petition for attorney fees, judicial interest, court costs, and other costs associated with the attempted collection of the open account owed by Mr. Hill to LGMC.

***Judicial Interest, Attorney Fees, Court Costs, and Other Costs***

In its petition, LGMC sought judicial interest from the date each obligation became due pursuant to La.Civ.Code art. 2000, which provides in pertinent part:

> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by [La.]R.S. 9:3500.

Therefore, we award LGMC legal interest calculated as fixed by La.R.S. 9:3500 from the date each obligation on the three separate bills became due: June 4, 2014 - $168.00; June 13, 2014 - $623.86; and June 16, 2014 - $1,778.82.

LGMC also sought a minimum attorney fee of 33 1/3 %, or $500.00, whichever is greater, pursuant to La.R.S. 9:2781(A), which provides in pertinent part:

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.

Accordingly, we award LGMC attorney fees of $825.74, which reflects 33 1/3 % of the $2,571.48 outstanding balance owed by Mr. Hill.

LGMC also sought "all court costs and other costs associated with the collection of the underlying debt whether incurred in this court or another venue and/or jurisdiction." In reversing the trial court and finding that Mr. Hill is responsible for the payment of $2,571.48 to LGMC for medical services rendered, all court costs are assessed to Mr. Hill. Considering the dismissal of LGMC's

claim on open account against Mr. Hill by the trial judge, no evidence was submitted or proffered by LGMC of the additional costs associated with the collection of the underlying debt. Based on the lack of evidence before us in the record, we are unable to make an award to LGMC for those costs.

## CONCLUSION

Considering the foregoing, we reverse the trial court's judgment of September 20, 2017 dismissing the claim on open account filed on behalf of Lafayette General Medical Center against Richard Hill and award Lafayette General Medical Center the claimed amount of $2,571.48 against Richard Hill, together with attorney fees in the amount of $825.74, judicial interest from the date each obligation became due, and all court costs. All costs of this appeal are assessed to Richard Hill.

**REVERSED AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.

# COURT OF APPEAL, THIRD CIRCUIT

## STATE OF LOUISIANA

### 17-971

**LAFAYETTE GENERAL MEDICAL CENTER, INC.**

**VERSUS**

**RICHARD HILL**

**COOKS, J., Dissents**

In this suit on open account, LGMC filed suit in Lafayette City Court to collect the unpaid balance on an open account for certain medical services. The trial judge dismissed LGMC's action finding it failed to prove that any of the services billed for were **actually rendered**. The trial court stated "I don't have any proof other than **test[s] were ordered, a charge was made, he laid on a table**, but I have **no proof that actual services were rendered**." I totally agree. The majority places emphasis on the notion that Hill "did not dispute that the medical tests were actually *performed*." But the question is not whether Hill presented himself for the tests and someone turned the machine on. The pivotal issue here is that Hill has called into question whether any test results were actually obtained, i.e., did the equipment work or will the tests have to be redone? Hill is refusing to pay for something that he has no reason to believe at this point exists. As Judge Boullion told the parties, Hill is more than willing to pay his bill if he is shown that the tests actually produced results. Hill was waiting all this time to find out if his cancer has returned. LGMC did not offer any evidence that the tests were actually successfully performed and did not offer **into evidence even the contract** on which its collection suit on open account was allegedly based. Its witness candidly admitted he had no evidence to present and no knowledge to offer at trial except

1

for some billings. LGMC asserted Hill had the burden to prove the services were not rendered. The trial judge disagreed and so do I. The trial judge said: "Well, I don't agree that it's his burden. I believe it's your burden and it's your hospital. I mean, the people who have the evidence of whether the tests were performed correctly is you. Those physicians are part of you." The majority says the burden shifted to Hill to prove that some or all of the tests were not performed simply upon the showing by LGMC that a bill was sent and remains unpaid. This is not enough to establish LGMC's prima facie case and the burden did not shift to Hill.

LGMC's counsel argued "when there's a contract for services provided and a prima facie showing the contract was entered into then it's the burden upon the person claiming the breach of that obligation to prove it." LGMC's attorney says he made "a prima facie case" that a contract for services was entered into. **He made no such showing.** *If* Hill signed any agreement with LGMC making him responsible for the charges LGMC failed to introduce such a document. In *Bieber-Guillory* 98-559 p. 7 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, 1149-50 (emphasis added) this court explained:

> This required showing [that an open account exists] by the Plaintiff presupposes the existence of an enforceable contract between the parties. "**For there to be an action on an open account, there must necessarily be a contract which gave rise to the debt**." *Blackie's Rental Tool & Supply v. Vanway,* 563 So.2d 350, 353 (La.App. 3 Cir.1990). **A creditor suing on open account must prove that the debtor contracted for the sales on open account**. *Id.; Advertiser Div. v. Southwest Mortg. & Inv.,* 424 So.2d 1284 (La.App. 3 Cir.1982). When there is no meeting of the minds between the parties, there is no consent, thus no enforceable contract. La.Civ.Code art.1927. Such that, **if there is no enforceable contract, the Plaintiff's attempt to prove the existence of an open account by establishing a prima facie case becomes extraneous.**

LGMC's counsel believes, and the majority agrees, he made a prima facie showing of a contract merely by submitting evidence that LGMC billed Hill's

2

insurance company for some tests. Hill admits only that he laid on a table to have some tests done but he also says he has no knowledge if any of those tests were actually performed. He says he would pay for the charges incurred if actual testing occurred. LGMC's attorney maintains, and the majority asserts, Hill must pay for the tests if *LGMC merely shows that he showed up to have the tests done.* Other than counsel for LGMC's "testimony," there is no evidence of a contract with LGMC and what the terms of the contract were regarding transmission of the results and re-testing if the initial testing was unsatisfactory. Comeaux testified he *assumed* doctors ordered the tests and sent Hill to be tested. Hill testified the tests were ordered by doctors. It *may be* that at some point in this process Hill signed a document making him personally responsible for paying any charges incurred for the tests, **but no such document was introduced as evidence**. I do not believe LGMC met the threshold proof that there is even a contract with Hill upon which it can make an open account claim. But even if the court could properly find LGMC may proceed on open account **it has <u>not</u> made a prima facie showing that it is entitled to collect.**

To collect on its open account LGMC had to show more than "a contract was entered into." It had to show that (1) **actual services were provided** to Hill, (2) he was billed for services actually performed/delivered, and (3) after notice he has failed to pay for the services rendered. Just showing a contract was "entered into" does not make a prima facie case that services were rendered for which the recipient of the services must pay. The majority cites our decision in *Bieber-Guillory* to establish what is needed to prove a claim on an open account: "[P]laintiff first **must prove the account** by showing that the record of the account was kept in the course of business and by **introducing supporting testimony**

3

**regarding its accuracy**." This means that in this case LGMC had to **prove the existence of the account**, i.e. it had to prove (1) it rendered or delivered certain services; (2) it billed a certain amount for those services; (3) Hill has an unpaid balance; and (4) the billing and balance due is accurate. LGMC could do this by presenting to the court its records kept in the normal course of operating its business and supporting testimony by someone from LGMC that shows those records are accurate. LGMC failed to do item (1) in this case. LGMC only introduced the billing for certain services and put on testimony by Comeaux from its financial department that these bills were accurate. But **it did not complete the proof of the account** because it failed to present any document kept in the normal course of its operation to show that the tests were actually successfully performed such that the tests produced results that could be sent to and used by Hill's doctors. It could have introduced a copy of the test results or at least a letter transmitting the results to Hill or his doctor(s). It did not, and that failure is dispositive. I note that LGMC did introduce a form signed by Hill authorizing LGMC to use any medical information obtained from the tests. It was not for any lack of authorization by Hill that no results have been sent to anyone.

The trial judge stated "[**Mr. Hill] has no proof that the test[s] were ever done**, other than he was told to lay on this table" (emphasis added). When she asked LGMC's counsel to respond to that he simply replied "… the test[s] were conducted," but offered no evidence to prove the attorney's "testimony." The trial judge responded "Well—**we don't know whether they were because your witness testified that he didn't know**." She added "We know the billing got done. But, we don't know actually if the test was successfully administered. If it wasn't successfully administered, he doesn't owe the money." I agree.

4

When LGMC's witness, Mr. Comeaux, was asked: "Can you find out if the test came out? What was the result of the tests?" he responded, "Yes," and then explained **he did not have such records with him**. <u>**This is part of the missing evidence crucial to LGMC's prima facie case.**</u> *If* the tests were successfully performed there may well be a document generated in the normal business practices of LGMC that would show the results of the various tests or procedures. LGMC could have presented such evidence, or at least have presented a transmittal of the test results to Hill and/or his doctors. Such a letter would be the bare minimum to establish a prima facie case that the tests were actually successfully administered. **But there was no such evidence offered here and LGMC's only witness said he did not know.**

The majority states Hill "*received* medical services from LGMC on three separate occasions . . ." (emphasis added) He reaches that conclusion because: "Mr. Hill admitted that he went to LGMC for tests ordered by his doctors and was seen by LGMC's staff." But the record shows only, as the trial judge noted, that **tests were ordered, Hill laid on a table, charges were billed**. **LGMC failed to offer any evidence that any of the tests were actually performed**, i.e **it failed to show that Hill actually "<u>received</u> medical services."** LGMC's sole witness, Mr. Comeaux, testified **he only had knowledge that a claim was filed** with Hill's insurance company for the bills generated by the hospital and that there is an outstanding balance due. Comeaux had **no knowledge** of who ordered the tests, **whether the tests were actually performed successfully**, **or for that matter, at all**, and **whether there were any results available to be sent** to Hill's treating physicians. Hill testified he had no way of knowing whether the machines worked when he laid on the table or whether the tests needed to be re-done. That

5

testimony is beyond dispute. All he knows is that no one has ever contacted him regarding any of the tests for which he is being billed and LGMC never sent him, or, to his knowledge, his doctors, any results of the tests. As of the date of trial Mr. Hill was still waiting to know whether the equipment actually worked, and if it did, what did the results show concerning the possibility that his prostate cancer has returned. I too, would refuse to pay for these tests under such circumstances, and rightfully so. If LGMC has results from these tests it is a simple matter to present them to Hill so that he and his doctors can know if his cancer has returned. He says he will pay if they just do that. I do not think that is too much to ask.

This case presents similar facts to those addressed by the appellate court in *Cline v. George Kellett & Sons, Inc.*, 96-456 (La.App. 5 Cir. 11/14/96), 685 So.2d 206. In that case, Cline decided to build a house and needed some lumber. Kellett delivered some lumber to Cline and billed him. Cline refused to pay the full amount billed asserting, among other reasons, that he did not receive all of the lumber for which he was billed. Kellett's vice-president and general manager, Dale P. Bernard, testified regarding the normal procedures for delivery and invoicing. He presented an invoice which purported to show the amount of lumber delivered and the price. But these invoices did not have any indicators on them that would ordinarily show that delivery of the disputed amount of lumber actually occurred, or that would at least make a prima facie showing that delivery was made. Bernard, like Comeaux in this case, admitted "he did not actually know whether the materials were delivered and received at the job site." Plaintiff argued in *Cline* "that proof of actual delivery is not required in order to make out a prima facie case." The appellate court **rejected that argument** in *Cline* explaining that "proof of actual delivery is not required *'[i]n a suit on open account, **where the**

6

_record shows_ that books were kept in the normal course of business and indicated that merchandise _has been sold and delivered_." _Entron v. Callais Cablevision_, 307 So.2d 787, 793-94 (La.App. 1 Cir. 1975). In the instant case the delivery ticket in question deviates from the procedure used in Kellett's normal course of business and **does not show by its own procedures that these items were delivered.**" _Cline_, 685 So.2d at 208 (emphasis added and in original). In the present case it may be that records exist which would make the required showing but **they were not introduced at trial**. Comeaux testified he did not have such records with him. The Plaintiff in _Cline_ argued that in a previous case before the first circuit "ledger cards or statements of the account were sufficient to establish a prima facie case" but the court pointed out in that case "the delivery tickets were signed by the defendant," thus on their face making a prima facie case of delivery, and all the records introduced on the account "had been made under [the witness'] supervision and control." The appellate court contrasted that to Bernard's testimony and evidence in _Cline_ that showed "[Bernard] did not know whether the items were delivered and could only 'surmise' the items had been left at the job site." In other words, Bernard could only speculate that the goods billed for were actually delivered. The documents in _Cline_ showed only what was purportedly owed but contained nothing to make a prima facie showing that the lumber was actually delivered. The same thing is true in this case. The documents submitted by LGMC **only show the amount owed** and have **nothing on them indicating the services were actually performed.** The court in _Cline_ concluded it could not say the trial judge manifestly erred in finding Kellett **failed to meet its burden of proving a prima facie case.** The court further found this meant <u>the burden never shifted</u> to Cline requiring him to rebut the Plaintiff's evidence, i.e. _Cline did not_

*have to prove delivery as some sort of affirmative defense.* The same is true here. The witness called in this case, Comeaux, and the documents he presented, only show that LGMC sent a bill to Hill's insurance company. Nothing in Comeaux's testimony or in any evidence presented by LGMC shows that any of the tests were actually performed and produced results. Neither does LGMC present any evidence showing the results were reported to Hill or any physician. If any records kept in the normal course of business by LGMC had been introduced to show that test results were sent to someone that would have completed the necessary showing by LGMC to establish its prima facie case. **But no such testimony or evidence was presented**. The only thing Comeaux could testify to was LGMC's efforts "to contact a patient to let them know they've got an outstanding balance and try to get them to pay the obligation." No witness was called, nor was any document introduced to show that LGMC made any effort to send test results to Hill or his doctors, or, for that matter, whether there actually was any information to be sent. As the trial judge remarked, Comeaux "just deals with the finances." As I have stated, there may well be records in the possession of LGMC, kept in the normal course of its operations, that would indicate the tests were actually and successfully performed, and produced reportable results. **But no such records were introduced.**

LGMC failed to make a prima facie case, thus, **Hill was not required to offer any affirmative defense or rebuttal evidence.** Hill did, however, offer testimony that the trial judge said she believed to the effect that he had received nothing in any way indicating to him that any of the tests he presented himself for actually produced any results that could be reported to him or his doctors. As he said, he had "no idea if the test[s] came out" and "no idea what went on." More

8

compelling is Hill's testimony that points out "for all he knows [he] could have been in a dying stage [of prostate cancer]," and as he said: "Surely, you know, someone could have called and said 'Mr. Hill, we have the results that we ordered.' At that point, I would feel I'm obligated . . . I'm left in the blind and all I get is a bill." Hill would feel obligated at that point because he would then know that the machines worked and actually produced results. The trial judge correctly concluded LGMC failed to present a prima facie case.