GUIDRY, Justice.*
| ,We granted certiorari in this matter to address the issue raised in the exception of no cause of action subject of these proceedings. The peremptory exception poses the legal question of whether the State of Louisiana may recover reimbursement of salary and benefits paid to a former employee for the period the employee simultaneously held two full-time governmental positions in violation of Louisiana’s Dual Officeholding and Dual Employment Law, La. R.S. 42:61, et seq., (hereafter, “DODEL”), when suit was filed after the employee vacated one of her positions. For the reasons that follow, we find reimbursement is barred when the prohibited dual employment is terminated prior to the filing of a petition seeking relief under the DODEL. Accordingly, the court of appeal’s ruling reversing the trial court and granting the exception of no cause of action filed by the defendant, Sarah Holli-day, is affirmed.
FACTS AND PROCEDURAL HISTORY
On October 17, 2005, Sarah Holliday commenced full-time employment with the United States Small Business Administration’s Disaster Assistance Office. At the |2time, Ms. Holliday was already employed on a full-time basis as a judicial assistant and deputy clerk for the Nineteenth Judicial District Court for the Parish of East Baton Rouge (hereafter, “19th JDC”). Ms. Holliday worked simultaneously for both unrelated governmental agencies until February 15, 2006, the date she resigned from her 19th JDC position.
On March 31, 2006, the State of Louisiana, through the Office of the Attorney General, (hereafter, “the State”), instituted summary proceedings against Ms. Holliday pursuant to La. R.S. 42:65 of the DODEL, which provides in pertinent part:
A. The attorney general, a district attorney, or any citizen of the state of Louisiana may by summary process petition for a declaratory judgment against a person alleged to be holding incompatible offices or employments or holding a *815 combination of offices or employments prohibited in this Part....
B. If the court declares that the person is holding offices or employments in violation of this Part, the court shall declare the office with the term first to expire or one of the employments vacant and shall enjoin the person from further carrying out the duties of that office or employment; however, a person holding an elective office shall continue to serve and perform the duties of that office until his successor has qualified.
C. The court may order the reimbursement to the appropriate governmental body of all pay or other compensation and all allowances, including all allowances and payments for travel and other expenses which have been received by the official or employee in the position vacated as provided in Subsection B hereof, during a period of time not to exceed six months preceding the filing of suit for declaratory judgment....
Specifically, through its Petition for Declaratory Judgment and Reimbursement, the State seeks pursuant to Subsection (A) a judgment declaring Ms. Holliday engaged in conduct prohibited under La. R.S. 42:63[1] by virtue of her simultaneous retention |sof incompatible governmental positions. Based on such a declaration, the State requests under Subsection (C) of La. R.S. 42:65 reimbursement of $16,158.50, representing the salary and related benefits paid in connection with her judicial post for the period of her dual employment.
In addition to filing an answer to the petition denying a violation of the DO-DEL, Ms. Holliday filed a peremptory exception of no cause of action urging the State is barred from pursuing its suit and obtaining relief under La. R.S. 42:65. Applying a strict interpretation of La. R.S. 42:65, she advances any cause of action the State had under the DODEL became moot when she resigned from her state position. In support, Ms. Holliday contends the statute is couched in language that the wrongdoer must be engaged in the prohibited conduct at the time the litigation is instituted and the declaratory judgment is imposed. She relies on Subsection (A) of the provision, which provides that the State is afforded the right to file “a petition for a declaratory judgment against a person alleged to be holding incompatible offices or employments or holding a combination of offices or employments ...” (emphasis added). As to the issue of reimbursement, Ms. Holliday contends monetary recovery *816 pursuant to Subsection (C) is exclusively conditioned on the judicial declaration imposed under Subsection (B). The latter provision provides for the issuance of an |4order requiring that one of the offices be vacated and the defendant enjoined from carrying out the related duties “[i]f the court declares that the person is holding offices or employment in violation of this Part ....” (emphasis added).
Following a hearing, the trial court rendered judgment in favor of the State overruling the exception of no cause of action. The court concluded Ms. Holliday’s simultaneous holding of the incompatible full-time positions giving rise to the instant proceeding was adverse to the public’s interest and, thus, prohibited under La. R.S. 42:63(A).[2] In the absence of citing statutory or jurisprudential support, the court determined it was within its discretion to order reimbursement pursuant to La. R.S. 42:65(C) for the violation. It assessed Ms. Holliday payment of $16,158.60, constituting the salary and related benefits paid during the tenure of her dual employment.[3] Subsequently, the court denied Ms. Holliday’s request for a new trial.
The court of appeal reversed the trial court and granted Ms. Holliday’s peremptory exception. Foti v. Holliday, 08-0055 (La.App. 1 Cir. 11/18/08), 4 So.3d 823, reh’g denied (12/15/08). While the court did not contest the trial court’s finding that Ms. Holliday’s dual employment violated La. R.S. 42:63(A), it applied a strict interpretation of La. R.S. 42:65 to qualify the State’s claim was only actionable while Ms. Holli-day was engaged in the misconduct. The court reasoned Ms. Holliday’s resignation from her judicial position prior to the filing of the State’s petition precluded the commencement of proceedings under Subsection (A) of La. R.S. 42:65 because she was no longer simultaneously “holding” the employment positions prohibited under the DODEL. Further, the court of appeal recognized, in |sthe absence of an action properly commenced under Subsection (A), relief could not be rendered through the issuance of a judicial declaration directing the termination of the dual employment and reimbursement pursuant to Sections (B) and (C), respectively. Based on its reasoning, the court of appeal determined the State failed to articulate a cause of action under La. R.S. 42:65 because the petition did not allege Ms. Holliday was holding offices or employments prohibited by the DODEL at the time suit was filed. The State filed an application for rehearing, which was denied by the appellate court.
We granted certiorari to review the correctness of the court of appeal’s ruling reversing the district court’s denial of the exception of no cause of action. Foti v. Holliday, 09-0093 (La.4/3/09), 6 So.3d 779. The Court has no objection to the lower courts’ conclusions that Ms. Holliday’s dual employment subject of these proceedings is violative of La. R.S. 42:63. Our review is premised on the narrow issue of whether the State has a viable cause of action for reimbursement under La. R.S. 42:65(C) when the prohibited conduct was terminated prior to the filing of the petition under the DODEL.
*817 APPLICABLE LAW

Exception of No Cause of Action

The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. La. C.C.P. arts. 681 and 927; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., et al., 616 So.2d 1234, 1235 (La.1993). All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. La. C.C.P. art. 865; Kuebler v. Martin, 578 So.2d 113, 114 (La.1991). | fiThe burden of demonstrating that a petition fails to state a cause of action is upon the mover. Ramey v. DeCaire, 09-1299, p. 7 (La.3/19/04), 869 So.2d 114, 119.
The sufficiency of a petition subject of an exception of no cause of action is a question of law. Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349. We are mindful that a de novo standard is applied to the review of legal questions, wherein this Court renders a judgment based on the record without deference to the legal conclusions of the lower courts. Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353.

Statutory Construction,

In addressing the sufficiency of the State’s petition, we must examine whether any statutory remedy is afforded to the State under the DODEL for Ms. Holli-day’s prohibited conduct. This inquiry turns on the proper interpretation of La. R.S. 42:65, which also involves a question of law. Id.
“[T]he paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.” M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 13 (La.7/1/08), 998 So.2d 16, 27, citing State v. Johnson, 03-2993, p. 12 (La.10/19/04), 884 So.2d 568, 575. It is well established that “[t]he starting point for the interpretation of any statute is the language of the statute itself.” Dejoie v. Medley, 08-2223 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature’s intent. Id.; La. C.C. art. 9; La. R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. La. C.C. art. 10. When analyzing legislative history, it is presumed the Legislature’s actions in crafting a law |7were knowing and intentional. M.J. Farms, Ltd., 07-2371 at pp. 13-14, 998 So.2d at 27. More particularly, this Court must assume the Legislature was aware of existing laws on the same subject, as well as established principles of statutory construction and the effect of their legislative acts. Id.
We now apply these criterion to address the merits of Ms. Holliday’s exception of no cause of action relative to whether the State is afforded a judicial remedy under La. R.S. 42:65.
DISCUSSION
Applying the threshold requirement of statutory construction, we turn to the language of the provision at issue. Dejoie, 08-2223, 9 So.3d at 829. A plain reading of La. R.S. 42:65 illustrates the statute is framed in language that the wrongdoer must be engaged in the conduct prohibited under La. R.S. 42:63 at the time the requested relief is rendered in favor of the *818 plaintiff under Subsection (B) of La. R.S. 42:65. Logically, this encompasses the period when suit is filed. We rely on the critical wording in Subsection (A), which provides a summary process petition may only be filed against a person “alleged to be holding ” or “holding ” the simultaneous positions barred under the DODEL. Further, Subsection (B) allows for the issuance of a declaratory order terminating the dual employment “[i]f the court declares that the person is holding offices or employment in violation of this Part.” (emphasis added). While the State does not seek relief under Subsection (B) because the dual employment has already been terminated, Subsection (C) states that the reimbursement of salary and benefits is contingent on the imposition of a declaratory judgment pursuant to Subsection (B). Specifically, the Subsection (C) provides that “[t]he court may order the reimbursement to the appropriate governmental body of all pay or other compensation and all allowances, ... which have been received by Is the official or employee in the position vacated as provided in Subsection B hereof.” (emphasis added). Thus, based on our threshold inquiry, we agree with Ms. Holliday and the court of appeal that a strict application of La. R.S. 42:65 would support the dismissal of the State’s petition.
Although we conclude La. R.S. 42:65 is clear and unambiguous, we must next address whether the application of the provision as written leads to absurd consequences. La. C.C. art. 9; La. R.S. 1:4. Essentially, this warrants our consideration of the State’s primary objection that a strict application of the statute does not provide any penalty for a dual employment violation if the wrongdoer resigns from one position prior to the imposition of a declaratory judgment. Similarly, one of the two dissenting members of the appellate court panel characterizes the result from the majority’s interpretation of La. R.S. 42:65 as “illogical” insofar as it renders a court powerless to order reimbursement under Subsection (C) unless there is an order to vacate under Subsection (B). Moreover, he asserts the result is “absurd” in that it allows an employee’s resignation from one of the positions at any time after suit is filed, even up to the rendering of the judicial declaration. He reasons the court of appeal’s interpretation unjustly condones an employee’s manipulation of the judicial system in the absence of any accountability for the employee’s illegal actions.
In order to determine whether a strict application of La. R.S. 42:65 leads to a nonsensical result, we seek guidance from La. R.S. 42:61,[4] which sets forth the *819 19purpose for which the DODEL was enacted. In pertinent part, Subsection (B) of La. R.S. 42:61 states that the DODEL was implemented “to maintain a high level of trust and confidence by the general citizenry in public officials, employees, and governmental decisions of the government of this state.” The court in Arceneaux v. Treen, 671 F.2d 128, 133 (5th Cir.1982) interpreted La. R.S. 42:61 as follows:
Although Louisiana has advanced a host of rationales for [La. R.S. 42:63]’s prohibitions on dual public employment, we need not look any further than the statute’s explicitly stated purposes in order to uphold the legitimacy of the state’s goals. [La. R.S. 42:61] states the purposes of the Act’s prohibitions. Restrictions on dual officeholding and public employment are not novel Louisiana is legitimately concerned with its citizens’ perceptions of public employment. The Louisiana statute is obviously aimed the widespread perception that public employment-whether in federal, state, or local government offices-is merely a sinecure and that it is intolerable to give persons two slices of the public pie.
⅜ * ⅜ * ⅜
It was also reasonable for Louisiana legislators to believe that dual low-level public sector employment creates an improper appearance of impropriety.... Id., 671 F.2d at 133-134 (citations omitted).
We note Subsection (A) of the provision articulates the two instances when the public’s trust and confidence is “impaired”: when a public “employee holds two or more public offices or public jobs which by their particular nature conflict with the duties and interests of each other ... [and] by the excessive accumulation of | ^governmental power resulting from holding two or more public offices or public jobs.” In emphasizing the factors impairing the public’s trust and confidence, the statutory language illustrates the Legislature’s motive in enacting the DODEL was to eliminate the existence of the threat posed by the inherent conflict and the intangible accrual of power stemming from dual employment.
The court of appeal employed a strict interpretation of La. R.S. 42:65 to limit the causes of action and available relief that may be pursued under the DODEL to instances where the defendant is actively engaged in the misconduct posing the threat to the public trust and confidence at the time judgment is rendered. Such a construction of the statute is entirely consistent with the language and the express purpose of the law, which is to eliminate the existence of those dual employments that compromise the public’s interest due to inherent conflicts and excessive accumulation of governmental influence.
The State and the dissenting members of the court of appeal are correct that a literal application of La. R.S. 42:65 results in the absence of an available penalty under the DODEL to hold a wrongdoer accountable for his illegal actions when the prohibited employment is terminated prior to a judgment ordering the termination of the dual employment. More pertinent to these proceedings, we are cognizant of the the lack of a remedy under the DODEL for the State to obtain reimbursement of the governmental funds illegally received by Ms. Holliday during the period of the prohibited dual employment.
However, based on our review, we do not find monetary recovery of unlawfully *820 received salaries and benefits by an employee engaged in dual employment was a driving motive in the legislative enactment of the DODEL. The policy for enacting the DODEL articulated in La. R.S. 42:61 makes no reference, express or implied, that | ^an employee’s receipt of dual salaries and benefits constitutes an impairment to the public’s interest and confidence. Moreover, while La. R.S. 42:65 expressly rectifies the misconduct at issue through an issuance of an order to vacate pursuant to Subsection (B), the provision is not inherently penal in nature. In other words, there is no accountability for engaging in the illegal activity. While the Legislature does provide a remedy of reimbursement pursuant to Subsection (C), the penalty is imposed at the discretion of the court within limited circumstances (i.e., reimbursement conditioned on imposition of declaratory judgment). See State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800 (“What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will”).
Additionally, an extensive review of the legislative history does not reflect in any respect that the Legislature enacted the DODEL with a concern for the financial benefits afforded to employees through salaries paid to the detriment of the State’s fisc. Rather, the history indicates the law was enacted for the inherent reasons professed in La. R.S. 42:61, specifically, to eliminate those dual governmental roles that give rise to the appearance of impropriety, in an effort to promote a positive perception of governmental employment.[5]
*821 |i2As stated, the Court agrees the court of appeal’s strict application of La. R.S. |1342:65 furthers the Legislature’s mission in promoting public confidence through the elimination of certain dual employment and officeholding. Notwithstanding, we concede it is objectionable the State lacks an available remedy under the facts. Seemingly, the recovery of governmental monies received by a salaried employee engaged in dual employment would have been of interest to the Legislature in enacting the DODEL. Nonetheless, we are constrained by the limitations of our judicial role. “While it is this Court’s province ‘to consider the reason and spirit of a law,’ we are ‘not free to rewrite the law to effect a purpose that is not otherwise expressed.’ ” Naquin v. Titan Indem. Co. 00-1585, p. 9 (La.2/21/01), 779 So.2d 704, 710, citing Backhus v. Transit Cas. Co., 549 So.2d 283, 291 (La.1989). Particularly, “[w]e also recognize that it is not the function of the judicial branch in a civilian legal system to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so.” Carter v. Duhe, 05-390, p. 10 (La.1/19/06), 921 So.2d 963, 970. The fact that the Legislature could have drafted La. R.S. 42:65 differently, and failed to do so, does not permit the Court to abandon long-established tools of statutory construction. The Legislature is certainly aware of these rules and the limitations of our judicial function. Johnson, 03-2993 at 15, 884 So.2d at 577. The dissenting view is that this result is unfortunate. However, it is for the legislative branch to remedy the deficiencies in the statutory scheme, if it should so desire.
*822 CONCLUSION
Accordingly, we conclude Ms. Holliday has satisfied her obligation under La. C.C.P. arts. 681 and 927 of proving the State is not afforded a remedy in law based on the facts alleged in the petition. There was no legal basis under the DO-DEL for the State to assert a cause of action since the prohibited dual employment at issue was terminated prior to the commencement of the suit seeking judicial relief. As such, the | ucourt of appeal did not err in reversing the trial court’s denial of Ms. Holliday’s exception of no cause of action and dismissing the State’s action.
DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed, and the case is dismissed with prejudice.
AFFIRMED.
VICTORY, J., dissents for the reasons assigned by WEIMER, J.
KNOLL and WEIMER, JJ., dissent and assign reasons.

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice Pro Tem-pore, participating in the decision.

. La. R.S. 42:63(A), entitled “Prohibitions,” enumerates those activities barred under the DODEL. In pertinent part, the provision states:
A. (1) Except as otherwise provided in this Subsection, no person holding an elective office, appointive office, or employment in any of the branches of state government or of a political subdivision thereof shall at the same time hold another elective office, appointive office, or employment in the government of a foreign country, in the government of the United States, or in the government of another state.
(2) A person holding employment in the government of the United States and at the same time holding an appointive office in a political subdivision of the state shall not be in violation of this Subsection, unless the particular nature of his employment in combination with the duties and interests of his appointive office in a political subdivision of this state is otherwise prohibited by this Part or is found to be adverse to the public interest as set forth in R.S. 42:61.
‡ ⅜ ⅝ ⅝ ⅝
E. No person holding a full-time appointive office or full-time employment in the government of this state or of a political subdivision thereof shall at the same time hold another full-time appointive office or full-time employment in the government of the state of Louisiana, in the government of a political subdivision thereof, or in a combination of these....

. While Ms. Holliday did not contest she engaged in dual employment, she asserted her actions were not encompassed in the prohibited activities set forth in La. R.S. 42:63(A). She alleged she held an appointive office with the State of Louisiana and the particular nature of the employment, in combination with the federal employment, was not adverse to the public interest.

. The trial court recognized that it was not necessary to declare the office vacant under La. R.S. 42:65(B) because Ms. Holliday had already resigned from her state job.

. La. R.S. 42:61, entitled "Declaration of Policy, provides:
A. It is essential to the maintenance of a democratic society that public officials and employees perform the public business in a manner which serves to promote and maintain in the general citizenry a high level of confidence and trust in public officials, public employees, and governmental decisions. The attainment of this end is impaired when a public official or employee holds two or more public offices or public jobs which by their particular nature conflict with the duties and interests of each other. The attainment of a high level of confidence and trust by the general citizenry in public officials, employees, and governmental decisions is further impaired by the excessive accumulation of governmental power which may result from public officials or employees holding two or more public offices or public jobs.
B. It is the purpose of this Part to implement a policy which will serve to maintain a high level of trust and confidence by the general citizenry in public officials, employees, and governmental decisions of the government of this state and of its political subdivisions by defining and regulating dual *819 employment and by defining, regulating, and prohibiting dual officeholding.
(Emphasis added.)

. Since 1812, the Louisiana Constitution has directed the Legislature to enact laws relative to the dual officeholding by virtue of its powers endowed through La. Const. Art. 2, § 2. Currently, La. Const. Art. 10, § 22, entitled "Dual Employment and Dual Officeholding,” provides "[t]he legislature shall enact laws defining and regulating dual employment and defining, regulating, and prohibiting dual of-ficeholding in state and local government.”
Prior to the turn of the 20th century through the 1950's, the laws enacted to address simultaneous employments and office-holdings were criminal statutes subject to penalties of imprisonment and monetary fines. However, in the 1940's, the lack of enforcement of the criminal provisions, among others, led to mass legislative reform of the state and local governments. Historical writings from this period provide the greatest insight into the policy behind the prohibition of dual employment. See Exxon Pipeline Co. v. La. Public Service Comm., 98-1737, 98-1738, p. 8 (La.3/2/99), 728 So.2d 855, 860 (“It is undisputed legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent.”).
Most notably, in a Special Report from Louisiana State Law Institute to Legislature of Louisiana (May 1940), the Law Institute recommended the enactment of a more effective criminal statute prohibiting dual employment and officeholding. Specifically, the Law Institute expressed legislation was necessary to eliminate any potential impropriety stemming from governmental servants having the ability to participate in the legislation or authorization of those issues in which they had a vested interest. The Law Institute’s Special Report provides, in relevant part:
In the midst of the public scandals that have wracked our State during the past eight months this committee was appointed to make recommendations leading to certain reforms in the substantive and procedural criminal law of the State. The investigations of official misconduct in the State has served to point out a very great weakness in that portion of criminal statutes which have for their object prevention and punishment of misconduct and dishonesty on the part of public officials and employees .... [T]he structure of our criminal law insofar as it relates to the misconduct of public servants is antiquated and has not had the attention of our lawmakers for two or three decades. During this period the mass of public servants in our State, as in the Federal Government, has vastly grown, bringing with it increased need for just such statutes as are lacking.
The reason is apparent, of course, as to why the punishment of offenses against the per *821 son and property of individuals has filled every session of our legislature while offenses against the public fisc and public properly have no legislative attention. The reason is that in the former classes of cases there were individuals who are directly and personally interested in the enactment of such statutes, whereas there has been great indifference to the commission of similar offenses by public officials against the State or its subdivisions or institutions.
⅝ * * * ⅜
There has been a great hue and cry and just public indignation on the subject of dual office holding, and while the legislature has enacted statutes on this subject after the adoption of three past constitution, our present statute on the subject is woefully deficient and it is easy to understand why the public is confused and misled, and unable to understand why the constitution denounces dual office holding and yet it is so difficult to convict a person of this offense. The public is naturally indignant at revelations of public officials and members of public boards having financial interests in public contracts ...
* * * * *
It seems to this committee that the coming session of the Legislature is a good time for the adoption for such reform criminal legislation. The public interest is aroused and the legislators will be interested in adopting measures that will tend to prevent a recurrence of the unhappy situation in which our State has been plunged....
Id. at 5-7.
Although the reasons for proposing the legislation primarily reference concerns stemming from dual officeholding, the Louisiana Legislature in the 1940 Regular Session adopted verbatim, through the enactment of 1940 La. Acts, No. 259, the Law Institute’s proposed criminal statute barring certain dual employment, as well as dual officehold-ing. It was subsequently amended through 1942 La. Acts, No. 37, § 1 and 1956 La. Acts, No. 290, § 1 to eventually provide for La. R.S. 42:31, et seq., the first civil provisions that generally barred dual employment and officeholding. However, the statutes did not did not provide for any penalty or governmental remedy for a violation. In 1979, the Louisiana Legislature, through 1979 La. Acts, No. 700, § 1 and § 8, repealed the criminal provision relative to dual office holding and dual employment, as well as redesignated and amended the civil provisions, to provide for a more comprehensive body of law in the area. Specifically, it enacted the DODEL as it reads today pursuant to La. R.S. 42:61, et seq.