# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1119


\*\*\*\*\*\*\*\*\*\*

## STATE IN THE INTEREST OF H.C.



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2012-0217
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


**REVERSED AND REMANDED.**

**Lloyd Dangerfield**
**Attorney at Law**
**703 E. University Ave.**
**Lafayette, LA 70503**
**(337) 232-7041**
**COUNSEL FOR APPELLEE:**
 Scott Beeson

**Barry J. Sallinger**
**Allyson M. Prejean**
**Attorney At Law**
**820 West St. Mary Blvd.**
**Lafayette, LA 70502**
**(337) 235-5791**
**COUNSEL FOR APPELLEE:**
 Ashley Castille

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Bldg. 3, Room 212**
**Lafayette, LA 70508**
**(337) 262-5970**
**COUNSEL FOR APPELLEE:**
     **Department of Social Services**

**Katherine Lynn Hurst**
**Attorney at Law**
**P. O. Box 90316**
**Lafayette, LA 70509**
**(337) 233-6930**
**COUNSEL FOR APPELLEE:**
     **Linda Rushing**

**Michelle M. Breaux**
**Assistant District Attorney - Fifteenth Judicial District**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 262-8654**
**COUNSEL FOR APPELLANT:**
     **State of Louisiana**

**GREMILLION, Judge.**

This case arises under the Louisiana Children's Code, the auspices of which were invoked by the State of Louisiana in an attempt to have the minor, H.C., declared a Child in Need of Care (CINC) pursuant to La.Ch.Code art. 606. The State appeals the trial court's dismissal of the State's petition and the return of H.C.[1] to the custody of her mother, Ashley Castille, subject to supervised visitation with her father, Jamie Scott Beeson.

## FACTS

H.C. was born on January 16, 2012. Her delivery was effected by Caesarian section because her umbilical cord has wrapped around her neck. There was also concern for the fact that her mother had tested positive for Strep B, but following birth, H.C. tested negative for that bacterial strain. Following her discharge from the hospital, H.C. lived in the home of her maternal grandparents, Brian and Andrea Castille, with her mother and her minor uncle, Darren. H.C.'s father would periodically spend the night at the home, while on other occasions H.C. and her mother would spend the night at the father's residence.

After her birth, H.C. was noted by her grandmother to have difficulty taking a bottle. She seemed to gasp for air while feeding, even with a bottle equipped with a low-flow nipple. Her mother noticed that H.C.'s right foot would flap or twitch.

H.C. was primarily cared for during the day by Brian Castille, who had been disabled from his job as a transmission technician by neck surgery. Ashley and Andrea both are employed during the day.

---

[1] Pursuant to the recent decision of the Louisiana Supreme Court in *State of Louisiana v. R.W.B.*, 12-0453 (La. 12/4/12), ___ So.3d ___, we are required to use the initials of the minor involved, but are precluded from utilizing the initials of any other party to the action. *See* La.R.S 46:1844.

H.C. was taken to Lafayette General Hospital on March 2, 2012, because she was running a fever and was vomiting. She was released the same day. The next day, March 3, 2012, H.C. was at the Castille's home with her grandfather, her father, and her uncle. Brian Castille left the house to run an errand, leaving H.C. alone with her father and uncle. He received a call from his daughter telling him that H.C. had resumed vomiting and gasping for air. He rushed home to find H.C. not breathing, blue in color, and unresponsive. He picked her up in one hand facing down and applied a few pats to her back and began CPR. Brian's nephew, Lance Castille, had arrived at about the same time and assisted with administering CPR. Beeson phoned 911.

Acadian Ambulance transported H.C. to Women's and Children's Hospital in Lafayette, where she was seen by Dr. Gerald Alan Ross, a pediatric intensive care specialist. Dr. Ross ordered a CT scan of H.C., which revealed subdural and subarachnoid hematomas, or bleeding within two areas of the brain. This bleeding was fresh, as it appeared bright white on the CT scan. Dr. Ross was of the opinion that it was less than twenty-four hours old. He suspected that H.C. had been subject to "non-accidental trauma," known colloquially as Shaken Baby Syndrome.

After stabilizing H.C., Dr. Ross consulted with Dr. John Adam Flatt, a Lafayette pediatric neurologist, Dr. Derek E. Baty, a pediatric neurosurgeon, and Dr. Richard James Piccione, a pediatric ophthalmologist. All four doctors agreed that H.C.'s symptoms indicated to a very high degree that she had been subjected to abuse within seventy-two hours preceding the CT scans. Dr. Ross also notified authorities in the State Department of Child and Family Services (DCFS), which in turn notified the Lafayette Parish Sheriff's Office, which assigned Detective Casey Ryan Barfield the responsibility of investigating the suspected abuse.

Detective Barfield identified four people who had been alone with H.C. during the seventy-two hour period: her maternal grandparents, Brian and Andrea, and her parents, Ashley and Scott. No one he interviewed or who later testified at the hearing witnessed any abuse.

The State proceeded with steps to remove H.C. from her mother's custody and have her declared a CINC. The hearing to have H.C. adjudicated was held over the course of three days, June 21, 22, and 26, 2012. At the conclusion of testimony, the trial court found that H.C. had been subjected to non-accidental trauma. It found that the State had not carried its burden of proving who was responsible for inflicting the injuries to H.C. It dismissed the State's petition and ordered H.C. returned to Ashley's custody, with the grandparents having the privilege of unsupervised visitation, but the father having only supervised visitation.

The State has appealed, asserting that the trial court erred in dismissing the CINC petition and in returning H.C. to the custody of her mother.

**ANALYSIS**

Title VI of the Louisiana Children's Code governs CINC proceedings. Those proceedings are initiated by the filing of a petition by the district attorney, or, when authorized by the court, DCFS. La.Ch.Code art. 631. The petition is required to supply simple, concise, and direct allegations of fact which would provide grounds for an adjudication that a child is in need of care. La.Ch.Code art. 633. Those grounds for such an adjudication are found in La.Ch.Code art. 606, which provides:

> A. Allegations that a child is in need of care must assert one or more of the following grounds:
>
> (1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal

3

dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.

(2) The child is a victim of neglect.

(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.

(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent's custody or control.

(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child.

(6) The child is a victim of human trafficking or trafficking of children for sexual purposes.

B. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.

In H.C.'s case, the petition alleged that she was a victim of neglect in failing to have identified who abused her and in failing to "provide adequate supervision of their minor child which placed the child in a situation where she was physically injured." "Neglect," as used in the Louisiana Children's Code, is defined as:

the refusal or unreasonable failure of a parent or caregiver to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired.

La.Ch.Code art. 603(16).

The allegations of the State's petition do not meet the definition of "neglect," but rather the definition of "abuse," which is defined in pertinent part as,

"The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person." La.Ch.Code art. 603(1)(a). Nonetheless, the petition is only required to allege facts demonstrating grounds for adjudicating the child in need of care.

The trial court found that H.C. was a victim of abuse. It had reasonable suspicion of who the abuser was. However, it also found that the State had failed to carry its burden of proof. We review the findings of fact of a juvenile court under the manifest error/clearly wrong standard. *In re A.J.F.*, 00-0948 (La. 6/30/00), 764 So.2d 47. Of this standard the Louisiana Supreme Court has stated:

> This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
>
> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally, Cosse v. Allen-Bradley Co.,* 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise,* 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978).

5

*Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993).

The record here supports the factual findings of the trial court in its oral reasons:

> The problem I have with this case is that it has not been proven by a preponderance of the evidence who injured the child. Now, I can make some distinctions, and I will make distinctions. And the distinction I'm going to make right now in this case, basically, we had four (4) people who had the opportunity, that we're aware of after investigation, had the opportunity to cause injury to this child. And this would have been the mother, the father, the paternal grandmother-- maternal grandmother and maternal grandfather.

> In all honesty, if I had to say which one of those do you -- if I were asked the question which one of those do you consider, based on the evidence, the most likely person to have caused this injury? I'd have to say the father. Okay. But we're not called upon to judge the father as opposed to the culpability of the mother or the grandmother, or the maternal grandfather. Each one is judged individually.

> So I'm going to talk first about Scott. Even though I find that he is more-- I can't say that he did it. And basically, when the burden of proof is by a preponderance of the evidence, it says more probable than not. Based on the evidence that I heard in this courtroom, I cannot say more probably than not, that he is the person who caused the injury. Perhaps he did. We can all say that. Because he had the opportunity. He was the last person alone with the child. He has some things in his record that you would like for them to be better, but we are what we are. Okay.

> But in my opinion, the State has not proven by a preponderance of the evidence more probably than not that he is the person. There are other -- It just hasn't been proven.

> But, now, where do we go now? And, of course, if they haven't proven it as to Scott, then clearly, they haven't proven relative to the mother or the maternal grandparents. But, again, I can't say that they didn't. I can't say that anybody didn't do this to this child. But I am satisfied somebody did.

Whether the trial court properly applied the law to these facts forms the State's real issue with the court's judgment.

The State argues that the trial court's ruling is in direct conflict with the supreme court's ruling in *State ex rel. L.B.*, 08-1539 (La. 7/17/08), 986 So.2d 62. In that case, the juvenile court found that the testimony and evidence did not

6

support a finding that either parent was responsible for the child's injuries. However, the supreme court found on review that the expert medical testimony established that the child's injuries were not only non-accidental but had occurred on separate occasions. "While the evidence does not prove that either parent physically abused their child, the evidence does prove they 'tolerated' the abuse of L.B. and permitted the child to remain in an abusive household/environment." *Id.* at 63.

Similarly, in *State ex rel. A.C.*, 99-1943 (La.App. 4 Cir. 2/23/00), 772 So.2d 668, *writ denied*, 00-1231 (La. 5/10/00), 761 So.2d 554, the court of appeal reversed the juvenile court's findings that hospital personnel were responsible for the injuries to the child during her delivery, when medical testimony almost unanimously established multiple episodes of severe trauma while the child was within the exclusive control of either her parents or grandmother.

The first step in interpreting every statute is to analyze the language of the statute itself. *Foti v. Holliday*, 09-0093 (La. 10/30/09), 27 So.3d 813. Louisiana Revised Statute 1:4 admonishes, "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." Louisiana Children's Code Article 606(A)(1) clearly states that the grounds for adjudicating a child in need of care are proof that 1) the child was the victim of abuse; and 2) the abuse was perpetrated, aided, or tolerated by the parent or caretaker. Scott and Ashley are the child's parents. Brian and Andrea meet the definition of "caretaker" found in La.Ch.Code art. 603(3) because they provide a residence for the child. The abuse could only have come at the hands of either a parent or caretaker. Under these circumstances, we find that the trial court erred. The facts of the case and the statute mandate an adjudication that the child is in need of care.

7

Accordingly, we reverse the trial court and find that H.C. is a Child in Need of Care. The matter is remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**