JAMES F. McKAY III, Chief Judge.
| defendant, Keisha McKey (“McKey”), appeals the March 18, 2014 judgment of the trial court, granting summary judgment in favor of defendant-in-reconvention, Anthony Mason (“Mason”), and dismissing McKey’s reconventional demand against Mason with prejudice.[1] For the reasons set forth below, we affirm.
*765 STATEMENT OF FACTS AND PROCEDURAL HISTORY
McKey’s New Orleans home was demolished following Hurricane Katrina. Thereafter, McKey purchased a new home kit from Valuebuild (not involved in this action), consisting of pre-cut construction materials such as structurally insulated panels (“SIPs”). On October 20, 2008, McKey contracted with Syzygy Construction, LLC (“Syzygy”) to construct the Va-luebuild home.
The record reflects that Syzygy was formed in 2006, and was issued a Louisiana Residential Contractor License in 2007. Mason and Marking were the sole managers and members of Syzygy, with Marking serving as the qualifying party on Syzygjfs license.
1 ¡>Syzygy began work on McKey’s home in March 2009. A dispute arose during construction, and the contract was terminated. Syzygy filed a petition for damages on open account alleging that McKey owed a balance of $30,249.62 on the contract. McKey answered and filed a recon-ventional demand against Syzygy, Mason, and Marking, alleging breach of contract, unfair trade practices, fraud, professional negligence, and negligent infliction of emotional distress.[2]
At the heart of this matter, McKey asserts that Mason’s acts of fraud and professional negligence subject him to personal liability pursuant to La. R.S. 12:1320(D).[3] Mason filed a motion for summary judgment, arguing that there was no evidence of fraud on his part. The motion further asserted that a claim for professional negligence could not apply to Mason in his role as a member/owner of Syzygy, because he is not a “professional” as recognized by the Supreme Court in Ogea v. Merritt, 2013-1085 (La.12/10/13), 130 So.3d 888.
Following oral argument and the introduction of evidence, the trial court granted Mason’s motion for summary judgment and dismissed McKey’s reconventional demand with prejudice. This appeal followed.
1,,STANDARD OF REVIEW
“A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.” Samaha v. Rau, 2007-1726, p. 3 *766 (La.2/26/08), 977 So.2d 880, 882 (citing Duncan v. U.S.A.A. Ins. Co., 2006-363 p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. “A summary judgment is reviewed de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, ie., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.” Davis v. Canadian Nat. Ry., 2013-2959, p. 2 (La.4/17/14), 137 So.3d 11, 13 (citing Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.
A motion for summary judgment is properly granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). “A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.” Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (per curiam) (citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). “A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.” Id. at p. 1, 876 So.2d at 765-66.
La. C.C.P. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings, providing:
|4The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
See also Schultz v. Guoth, 2012-0343, p. 6 (La.1/19/11); 57 So.3d 1002, 1006.
LAW AND ANALYSIS
In granting summary judgment in favor of Mason, the trial court found no evidence of fraud or breach of professional duty. On appeal, McKey asserts that the trial court erred in finding that there was no genuine issue of material fact as to: 1) whether Mason committed fraud in the inducement to contract between McKey and Syzygy; and 2) whether Mason is subject to professional negligence.
Generally, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. Ogea v. Merritt, 2013-1085, p. 6 (La.12/10/13), 130 So.3d 888, 894-895 (citing La. C.C. art. 24). Additionally, members of an LLC are immune from liability for the LLC’s debts, obligations, and liabilities. La. R.S. 12:1320(B). However, this limited liability for members is subject to certain exceptions. La. R.S. 12:1320(D) provides that members of an LLC can be liable in their individual capacity if they: 1) commit fraud; 2) breach a professional duty; or 3) perform a negligent or wrongful act against another. See Ogea, supra, p. 8, 130 So.3d at 896.

*767
Fraud

McKey alleges that Mason (along with Marking) fraudulently induced her to enter into the contract with Syzygy by misrepresenting that the company had |sexpertise and knowledge in new home construction using pre-cut panels (SIPs) as contained in the Valuebuild kit. In support of this assertion, McKey relies on the fact that Syzygy was a newly formed construction company in 2006, and that prior to 2006, Mason had only performed smaller remodeling jobs. Thus, McKey maintains that Mason misrepresented his expertise. McKey further asserts that proof of the misrepresentation is reflected in the poor workmanship, which she enumerates in her reconventional demand.
In opposition to McKey’s claim of fraudulent inducement to contract, Mason presented his affidavit attesting to the fact that Syzygy was a licensed residential general contractor during the construction of McKey’s home. Mason testified in his deposition that he started doing construction work in 2000 or 2001. He explained that he worked for a general contractor for a couple of years, and then began working with Marking on their own projects. When asked if he had experience with putting up SIPs, Mason unequivocally stated that he, together with the other individuals working on McKey’s job, had installed pre-cut panels before. Regarding his participation on McKey’s project, Mason’s affidavit states:
Affiant’s role as a member of Syzygy was managing the work in the field, estimating, and making sure that materials were on site when they were needed. Affiant performed minimal construction work on Ms. McKey’s project. Affiant helped established a process of putting up the pre-cut panels and may have done some interior framing but that would have been the extent of his participation in the actual construction.
The record reflects that McKey admitted in her deposition and in her reconven-tional demand that she chose Syzygy as her contractor after discovering (in early 2008) that Syzygy was building a Value-build-type home in another New Orleans neighborhood. This statement controverts McKey’s assertion that Syzygy and Mason had no experience in the construction of homes with SIPs. The record lfia!so reflects that Marking testified in his deposition that although he was not familiar with Valuebuild as a brand, he had worked on other SIP constructed homes. Clearly, McKey presents nothing to dispute the fact that Mason had experience with SIP construction and that Syzygy was licensed to construct her home. McKey has not suggested that construction with SIPs requires a special license or particular expertise.
Regarding the definition of fraud as an exception to a member’s limited liability, the Supreme Court explained:
As noted, fraud is not defined in La. R.S. 12:1320(D); therefore, we must turn elsewhere for a definition. Louisiana’s most longstanding legislative compilation, the Civil Code, provides the following definition: “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” La. C.C. art. 1953. This definition of fraud has remained essentially unchanged from that contained in Article 1847(6) of the Civil Code of 1870. See La. C.C. art. 1953, Revision Comment-1984, comment (a). It is appropriate to draw from such a longstanding definition because, when the legislature enumerated the term *768 “fraud” but did not define “fraud” in La. R.S. 12:1820, “this Court must assume the Legislature was aware of existing laws on the same subject.” See Foti v. Holliday, 09-0093, p. 6 (La.10/30/09), 27 So.3d 813, 817.
Ogea, 2013-1085, p. 11, 130 So.3d at 897-898.
After our de novo review of the record, and considering the definition of fraud cited hereinabove, we find no evidence that Mason intentionally misrepresented or suppressed the truth regarding his knowledge and expertise in construction. In sum, the record fails to demonstrate any genuine issues of material fact as to whether Mason fraudulently induced McKey to contract.[4]
l7Although McKey does not raise the third exception found in La. R.S. 12:1320(D), ie., negligent or wrongful acts, we note that her fraud claim against Mason lies in allegations of poor workmanship. In Ogea, the Supreme Court specifically stated:
[A] showing of poor workmanship arising out of a contract entered into by the LLC, in and of itself, does not establish a ‘negligent or wrongful act’ under La. R.S. 12:1320(D). To hold that poor workmanship alone sufficed to establish personal liability would allow the exception in La. R.S. 12:1320(D) to negate the general rule of limited liability in La. R.S. 12:1320(B).
Ogea, 2013-1085, p. 25, 130 So.3d at 905-906.
Utilizing this same rational, we cannot say that poor workmanship establishes fraud on the part of the LLC member under La. R.S. 12:1320(D).

Breach of Professional Duty

In addition to the fraud exception, McKey asserts that Mason should be held personally liable under the professional negligence exception in La. R.S. 12:1320(D). McKey submits that Mason breached his professional duty as a contractor because the work performed on her home fell below construction industry standards. We note that McKey cites no legal authority in support of this argument.
Mason counters, arguing that he does not fit the definition of “professional” as contemplated by La. R.S. 12:1320(D), relying on his undisputed assertions that he was not the qualifying party for Syzygy’s general contractor’s license, and that he held no construction license at the time in question. Mason further argues that he is not a professional as recognized by the Supreme Court in the Ogea case.
In Ogea, Ms. Ogea contracted with Merritt Construction, LLC to build a home. Mr. Merritt was the only member of the LLC. A dispute arose in | ^connection with pouring the slab. Ms. Merritt filed suit against the LLC and against Mr. Merritt individually. The district court rendered judgment against both the LLC and Mr. Merritt, finding that Mr. Merritt personally performed some of the foundation work and failed to properly supervise the subcontractor who actually poured the concrete, providing grounds for Mr. Merritt’s personal liability. The appellate court affirmed the imposition of personal liability on Mr. Merritt. The Louisiana Supreme Court granted writs to address the limitation of liability afforded to a member of an LLC, and reversed the lower courts’ rulings.
*769 Ms. Ogea’s argument was similar to the one presented here by McKey. Specifically, Ms. Ogea asserted that Mr. Merritt’s role as a contractor should be found to equate to a professional role and that his derogation from acceptable standards for contractors likewise should be found to equate to a “breach of professional duty” under La. R.S. 12:1320(D). In rejecting that argument, the Supreme Court stated:
Just as with the fraud exception, La. R.S. 12:1320 does not define the quoted phrase [breach of professional duty]. Therefore, we are directed to search for a definition outside the statute itself.
Again, in searching for the intended meaning of “any breach of professional duty” in La. R.S. 12:1320(D), we recall that “this Court must assume the Legislature was aware of existing laws on the same subject.” (Citation omitted). Recognizing that the word “professional” is the focus of the quoted exception, the following principle must be observed as well: “Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” La. R.S. 1:3.
When the LLC statutes were enacted, “professional” had a clearly defined technical meaning within the law of business entities. See James S. Holliday, Jr., & H. Bruce Shreves, Louisiana Practice Series: Louisiana Construction Law § 1:9 pp. 10-11 (2013) (“Since 1964, professional law corporations have been possible in Louisiana. In 1968, with recodification of Louisiana’s corporate laws, professional medical corporations were also permitted. Since then, Louisiana has enacted statutory provisions for professional corporations for the dental, accounting, chiropractic, nursing, | ¡¡architectural, optometry, psychology, veterinary medicine and architectural-engineering professions.” (Footnotes omitted).)
Turning to the record before us, we find Ms. Ogea introduced no evidence that Mr. Merritt was a member of one of these legislatively-recognized professions. Instead, Ms. Ogea suggests that Mr. Merritt’s role as a contractor should be found to equate to a professional role and that his derogation from acceptable standards for contractors likewise should be found to equate to a “breach of professional duty” under La. R.S. 12:1320(D). However, Ms. Ogea again failed to offer proof at trial to justify her argument. From all that appears, it was the LLC that held a contractor’s license, not Mr. Merritt individually.
In the record, we find the contract between the LLC and Ms. Ogea purports to describe the contractor’s licensing status. On the face of the contract, it is not Mr. Merritt, but the LLC, which is described as holding a contractor’s license. While this contract is not necessarily dispositive proof of licensure, Ms. Ogea introduced no competent evidence to show otherwise. Given the lack of proof that Mr. Merritt was individually licensed, and given that Ms. Ogea had the burden of proof at trial to show she should recover from Mr. Merritt, we cannot reach the question ’of whether such licensing elevates an individual to the status of a “professional” as contemplated by the legislature and as Ms. Ogea suggests.FN8 We do not suggest that mere licensure results in one being considered a professional; but it may be one factor to consider. On the record before us, we find Ms. Ogea did not establish that Mr. Merritt fit the definition of a “professional” under La. *770 R.S. 12:1320(D), such that Mr. Merritt could be held personally liable.
Ogea, 2013-1085, pp. 12-14, 130 So.3d at 898-899.
In the present case, the record demonstrates that Mason was not the qualifying party on Syzyg/s general contractor’s license, and he held no contractor’s license in his name. Under the circumstances, and applying the Court’s reasoning in Ogea, we find that Mason was not a professional within the j ^meaning of La. R.S. 12:1320(D), and thus, cannot be held personally liable for breach of professional negligence.
CONCLUSION
For the foregoing reasons, we find that the trial court properly granted the motion for summary judgment in favor of Mason and properly dismissed McKey’s reconven-tional demand against him. Accordingly, the judgment is affirmed.
AFFIRMED.

. The judgment also granted a partial summary judgment in favor of defendant-in-re- *765 convention, Travis Marking ("Marking”). That ruling is not before us in this appeal.

. McKey's negligent infliction of emotional distress claim was dismissed by judgment dated December 18, 2012.

. La. R.S. 12:1320 provides:
A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

. It is evident from McKey’s appeal brief that the other allegation of fraud, i.e., the misappropriation of her $21,606.30 advance payment under the contract, is directed only toward Marking. Thus, we will not address that allegation herein.

 In evaluating Ms. Ogea’s suggestion that Mr. Merritt’s alleged role as a contractor should be equated with the role of a professional, we observe that Louisiana's limited liability law appears to draw a distinction between a person engaged in a “profession” and a person engaged in a “trade.” See La. R.S. 12:1301(A)(2) (defining "business” to mean “any trade, occupation, profession, or other commercial activity, including but not limited to professions licensed by a state or other governmental agency”).